IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

January 2013 Term

**FILED**

**June 5, 2013**

released at 3:00 p.m.
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

No. 11-0621

STATE OF WEST VIRGINIA,
Plaintiff Below, Respondent

v.

CLAYTON EUGENE ROGERS,
Defendant Below, Petitioner

Appeal from the Circuit Court of Kanawha County
The Honorable Carrie Webster, Judge
Criminal Action No. 10-F-847

AFFIRMED

Submitted: April 24, 2013
Filed: June 5, 2013

Crystal L. Walden, Esq.                     Patrick Morrisey, Esq.
Deputy Public Defender                       Attorney General
Office of the Public Defender                Benjamin F. Yancey, III
Charleston, West Virginia                    Assistant Attorney General
Attorney for the Petitioner                  Charleston, West Virginia
                                             Attorneys for the Respondent

The Opinion of the Court was delivered PER CURIAM.

SYLLABUS BY THE COURT

1. "On appeal, legal conclusions made with regard to suppression determinations are reviewed *de novo*. Factual determinations upon which these legal conclusions are based are reviewed under the clearly erroneous standard. In addition, factual findings based, at least in part, on determinations of witness credibility are accorded great deference." Syl. Pt. 3, *State v. Stuart*, 192 W.Va. 428, 452 S.E.2d 886 (1994).

2. "When reviewing a ruling on a motion to suppress, an appellate court should construe all facts in the light most favorable to the State, as it was the prevailing party below. Because of the highly fact-specific nature of a motion to suppress, particular deference is given to the findings of the circuit court because it had the opportunity to observe the witnesses and to hear testimony on the issues. Therefore, the circuit court's factual findings are reviewed for clear error." Syl. Pt. 1, *State v. Lacy*, 196 W.Va. 104, 468 S.E.2d 719 (1996).

3. "[A] circuit court's denial of a motion to suppress evidence will be affirmed unless it is unsupported by substantial evidence, based on an erroneous interpretation of law, or, based on the entire record, it is clear that a mistake has been made." Syl. Pt. 2, in part, *State v. Lacy*, 196 W.Va. 104, 468 S.E.2d 719 (1996).

i

4. "Our prompt presentment rule contained in W. Va. Code, 62-1-5, and Rule 5(a) of the West Virginia Rules of Criminal Procedure, is triggered when an accused is placed under arrest. Furthermore, once a defendant is in police custody with sufficient probable cause to warrant an arrest, the prompt presentment rule is also triggered." Syl. Pt. 2, *State v. Humphrey*, 177 W.Va. 264, 351 S.E.2d 613 (1986).

5. "'The delay in taking a defendant to a magistrate may be a critical factor [in the totality of circumstances making a confession involuntary and hence inadmissible] where it appears that the primary purpose of the delay was to obtain a confession from the defendant.' Syllabus Point 6, *State v. Persinger*, [169] W.Va. [121], 286 S.E.2d 261 (1982), as amended." Syl. Pt. 1, *State v. Guthrie*, 173 W.Va. 290, 315 S.E.2d 397 (1984).

6. "Before disqualification of counsel can be ordered on grounds of conflict arising from confidences presumably disclosed in the course of discussions regarding a prospective attorney-client relationship, the court must satisfy itself from a review of the available evidence, including affidavits and testimony of affected individuals, that confidential information was in fact discussed." Syl. Pt. 3, *State ex rel. Youngblood v. Sanders*, 212 W.Va. 885, 575 S.E.2d 864 (2002).

7. "When the information that is the subject of a disqualification motion

ii

predicated on prospective representation was 'generally known' or otherwise disclosed to individuals other than prospective counsel, the information cannot serve as a basis for disqualification under Rule 1.9 of the Rules of Professional Conduct." Syl. Pt. 4, *State ex rel. Youngblood v. Sanders*, 212 W.Va. 885, 575 S.E.2d 864 (2002).

8. "A judgment of conviction will not be set aside because of improper remarks made by a prosecuting attorney to a jury which do not clearly prejudice the accused or result in manifest injustice." Syl. Pt. 5, *State v. Sugg*, 193 W.Va. 388, 456 S.E.2d 469 (1995).

9. "Four factors are taken into account in determining whether improper prosecutorial comment is so damaging as to require reversal: (1) the degree to which the prosecutor's remarks have a tendency to mislead the jury and to prejudice the accused; (2) whether the remarks were isolated or extensive; (3) absent the remarks, the strength of competent proof introduced to establish the guilt of the accused; and (4) whether the comments were deliberately placed before the jury to divert attention to extraneous matters." Syl. Pt. 6, *State v. Sugg*, 193 W.Va. 388, 456 S.E.2d 469 (1995).

Per Curiam:

This case is before the Court upon the appeal of the Petitioner, Clayton Eugene Rogers, from the April 7, 2011,[1] sentencing order of the Circuit Court of Kanawha County, West Virginia, wherein the Petitioner was sentenced to life in prison without mercy after a jury convicted him of first degree murder without a recommendation of mercy. The Petitioner argues that the trial court erred: 1) in determining that his statement was not taken in violation of the prompt presentment statute, West Virginia Code § 62-1-5(a)(1) (2010); 2) in denying the Petitioner's due process rights when it denied counsel's motion to withdraw based on an actual conflict of interest; and 3) in denying the Petitioner's due process right to a fair trial based upon the prosecutor's improper, prejudicial closing argument. Having carefully reviewed the parties' briefs and arguments, the appendix record and all other matters submitted to the Court, the decision of the circuit court is hereby affirmed.

## I. Facts and Procedural History

Keith Hubbard testified that on August 28, 2010, he, the victim, Laura Amos, and the Petitioner were all drinking under a bridge in St. Albans, West Virginia. The Petitioner and Ms. Amos had been in a relationship off and on for years. Mr. Hubbard stated

_____

[1]The notice of appeal was timely filed in this case by the Petitioner's trial counsel. There were several amended scheduling orders entered by the Court extending the time to file briefs in this case.

1

that the Petitioner and Ms. Amos got into an argument with one another due to another man, Greg Lacy, supposedly proposing marriage to her. The Petitioner was angered by this proposal and told Ms. Amos that he would kill her. Mr. Hubbard and Ms. Amos left the area under the bridge and went to Mr. Lacy's home that was also located in St. Albans. The two spent the night at Mr. Lacy's home.

The next day, August 29, 2010, the Petitioner, Mr. Hubbard and another man, Larry Means, were hanging out at an abandoned house on West Main Street in St. Albans and had been drinking beer and vodka together throughout the day.[2] Mr. Hubbard testified that the Petitioner was still angry about the proposal made to the victim. Ms. Amos joined them at the abandoned house. Everyone was sitting on the front porch of the house, drinking alcohol in celebration of the Petitioner's birthday. Mr. Lacy came by the abandoned home and walked up to the porch. Mr. Lacy and the Petitioner argued about Mr. Lacy's proposal to Ms. Amos. Mr. Lacy left the house.

Mr. Hubbard testified that about five minutes later, the Petitioner and Ms. Amos got up and walked around the corner of the abandoned house. Mr. Hubbard and Mr. Means remained on the porch of the abandoned house. Mr. Hubbard stated that about ten or fifteen minutes later, he heard Ms. Amos scream his name three times. Mr. Hubbard ran

---

[2]The Petitioner offered evidence of his intoxication in an attempt to show that he was not capable of deliberation and premeditation.

around to the side of the house to see what was happening, but he did not see anybody. He stated that he did not know where the Petitioner and Ms. Amos had gone, so he went back to the front porch.

Mr. Hubbard testified that he and Mr. Means sat on the front porch for a while until Rusty Martin came by the house and informed Mr. Hubbard that he was looking for a house to rent. Mr. Hubbard told him that he should check out the house where they had been sitting. When Mr. Hubbard and Mr. Martin started to enter the home, they saw Ms. Amos lying on the floor in a pool of blood. She had been stabbed twice in the neck.[3]

The police were called to the home. Upon their investigation at the scene, including talking to Mr. Means, Mr. Martin and Mr. Hubbard, the police obtained an arrest warrant for the Petitioner, who had fled the scene. The police searched for the Petitioner, but did not find him until the next day.

On August 30, 2010, pursuant to an arrest warrant, Captain Donald Scurlock

---

[3]According to Mr. Hubbard, the Petitioner had shown him two "little pocket knives" early in the day.

3

of the Nitro Police Department[4]and Detective Sean Snuffer of the Kanawha County Sheriff's

Office arrested the Petitioner around 3:15 p.m. near the home of the Petitioner's friend,

Timothy Ward, in St. Albans. At approximately 3:18 p.m., while the Petitioner was being

transported to the Kanawha County Sheriff's Office, he was advised of his *Miranda*[5] rights

by Captain Scurlock.

Upon arriving at the Sheriff's department, at approximately 3:55 p.m., the

Petitioner was again read his *Miranda* rights by Detective Snuffer. The Petitioner signed a

waiver of rights form on which he circled and initialed on the form that he was willing to

make a statement to the law enforcement officers. The Petitioner was interviewed by Captain

Scurlock and Detective Snuffer. During the interview, the Petitioner admitted to

slicing/cutting the victim's throat. He stated that he fled out the side door of the house and

into a wooded area behind the house. The Petitioner explained to the officers where he

discarded the knives. The interview concluded at approximately at 4:50 p.m.

At the conclusion of the interview, Captain Scurlock and Detective Snuffer

---

[4]At the time of the victim's murder, Detective Scurlock was assigned to the Kanawha County Bureau of Investigations, which is a multi-jurisdictional police unit responsible for investigating crimes throughout Kanawha County.

[5]*See Miranda v. Arizona*, 384 U.S. 436 (1966).

indicated that they were going to begin processing the Petitioner by fingerprinting him, photographing him and doing paperwork. At this time, Detective Snuffer advised the Petitioner that he had the right to be promptly presented to a magistrate because he was under arrest. The Petitioner, however, agreed to waive his right to prompt presentment and to take the officers to where he had discarded the knives he used to murder the victim. The officers, even after the Petitioner indicated he would waive his right to prompt presentment, told the Petitioner that if at any time he changed his mind and wanted to be taken to the magistrate, all he had to do was to let them know that and they would immediately bring him to the magistrate. The Petitioner was allowed to speak to his daughter who came to the sheriff's office. He then was transported by the officers to the area where he stated he had discarded the knives. The knives, however, were not found.

The law enforcement officers returned to the sheriff's office with the Petitioner around 7:00 to 8:00 p.m. The undisputed evidence was that there was no magistrate on duty in Kanawha County between 6:00 and 8:00 p.m. on this day. Detective Snuffer testified that the Petitioner was taken to the magistrate at 8:00 p.m., when the magistrate came back on duty.

The Petitioner was indicted by a Kanawha County grand jury for first degree murder. The Petitioner's trial began on February 22, 2011, and ended on February 25, 2011.

The jury convicted the Petitioner of first degree murder without a recommendation of mercy. He thereafter was sentenced to life in prison without the possibility of parole. He now appeals his conviction.

## III. Argument

### A. Prompt Presentment

The first assignment of error[6] raised by the Petitioner is that the trial court erred in ruling that the Petitioner's statement was not taken in violation of the prompt presentment statute, West Virginia Code § 62-1-5(a)(1).[7] The Petitioner argues that upon his arrest he should have been taken directly to the magistrate. Because the Petitioner first was taken to the sheriff's office, he argues that his statement should have been suppressed by the trial

---

[6]Because the standard of review is different for each assignment of error, it will be set forth within the discussion of each assigned error.

[7]West Virginia Code § 62-1-5(a)(1) provides:

> An officer making an arrest under a warrant issued upon a complaint, or any person making an arrest without a warrant for an offense committed in his presence or as otherwise authorized by law, shall take the arrested person without unnecessary delay before a magistrate of the county where the arrest is made.

*See also* W. Va. R. Crim. P. 5(a) (providing that "[a]n officer making an arrest under a warrant issued upon a complaint or any person making an arrest without a warrant shall take the arrested person without unnecessary delay before a magistrate within the county where the arrest is made").

6

court.[8]  *See id.*   The State, however, argues that the Petitioner was transported to the Kanawha County Sheriff's Office because it was consistent with normal procedure to do so and that there was no delay in promptly presenting the Petitioner to the magistrate for the primary purpose of obtaining a confession.

In reviewing a trial court's ruling regarding a motion to suppress, we apply the following standard of review:

> On appeal, legal conclusions made with regard to suppression determinations are reviewed *de novo*. Factual determinations upon which these legal conclusions are based are reviewed under the clearly erroneous standard. In addition, factual findings based, at least in part, on determinations of witness credibility are accorded great deference.

Syl. Pt. 3, *State v. Stuart*, 192 W.Va. 428, 452 S.E.2d 886 (1994).   This Court also held in syllabus point one of *State v. Lacy*, 196 W.Va. 104, 468 S.E.2d 719 (1996), that:

> When reviewing a ruling on a motion to suppress, an appellate court should construe all facts in the light most favorable to the State, as it was the prevailing party below. Because of the highly fact-specific nature of a motion to suppress, particular deference is given to the findings of the circuit court because it had the opportunity to observe the witnesses and to hear testimony on the issues. Therefore, the circuit court's factual findings are reviewed for clear error.

Further,  "a circuit court's denial of a motion to suppress evidence will be affirmed unless it is unsupported by substantial evidence, based on an erroneous interpretation of law, or,

---

[8]The Petitioner does not challenge the voluntariness of his confession.

based on the entire record, it is clear that a mistake has been made." *Id.* at 107, 468 S.E.2d 722, Syl. Pt. 2, in part.

As this Court has previously held,

[o]ur prompt presentment rule contained in W. Va. Code, 62-1-5, and Rule 5(a) of the West Virginia Rules of Criminal Procedure, is triggered when an accused is placed under arrest. Furthermore, once a defendant is in police custody with sufficient probable cause to warrant an arrest, the prompt presentment rule is also triggered.

Syl. Pt. 2, *State v. Humphrey*, 177 W.Va. 264, 351 S.E.2d 613 (1986). We have also recognized, however, that "[c]ertain delays such as delays in the transportation of a defendant to the police station, completion of booking and administrative procedures, recordation and transcription of a statement, and the transportation of a defendant to the magistrate do not offend the prompt presentment requirement." *State v. Sugg*, 193 W.Va. 388, 395-96, 456 S.E.2d 469, 476-77 (1995) (citing *State v. Ellsworth J.R.*, 175 W.Va. 64, 70, 331 S.E.2d 503, 508 (1985)) (footnote omitted).

When a defendant's statement to authorities is at issue, this Court has held:

"The delay in taking a defendant to a magistrate may be a critical factor [in the totality of circumstances making a confession involuntary and hence inadmissable] *where it appears that the primary purpose of the delay was to obtain a confession from the defendant*." Syllabus Point 6, *State v. Persinger*, [169] W.Va. [121], 286 S.E.2d 261 (1982), as amended.

8

Syl. Pt. 1, *State v. Guthrie*, 173 W.Va. 290, 315 S.E.2d 397 (1984) (emphasis added).

Additionally, we have stated that

> "[o]ne of the primary purposes of a prompt presentment statute is to ensure that the police do not use the delay to extract a confession from a defendant through prolonged interrogation." *State v. Hutcheson*, 177 W.Va. 391, 394, 352 S.E.2d 143, 146 (1986). Thus, the focus is generally on the delay which precedes, and can therefore be used to induce, the confession. *State v. Judy*, 179 W.Va. 734, 372 S.E.2d 796 (1988); *State v. Hutcheson, supra*. As we stated in Syllabus Point 8 of *State v. Worley*, 179 W.Va. 403, 369 S.E.2d 706, *cert. denied*, 488 U.S. 895, 109 S. Ct. 236, 102 L. Ed. 2d 226 (1988):
>
>> " 'Ordinarily the delay in taking an accused who is under arrest to a magistrate after a confession has been obtained from him does not vitiate the confession under our prompt presentment rule.' Syllabus Point 4, *State v. Humphrey*, 177 W.Va. 264, 351 S.E.2d 613 (1986)."

*State v. Fortner*, 182 W.Va. 345, 352, 387 S.E.2d 812, 819 (1989).

This Court has also stated that "[t]he prompt presentment rule is not nullified merely because the police read *Miranda* warnings to a suspect who is under arrest." *State v. DeWeese*, 213 W.Va. 339, 345, 582 S.E.2d 786, 792 (2003). We further explained, however, that

> our prior cases do permit delay in bringing a suspect before a magistrate when the suspect wishes to make a statement. *See* Syl. pt. 3, *State v. Humphrey*, 177 W.Va. 264, 351 S.E.2d 613 (1986) ("The delay occasioned by reducing an oral confession to writing ordinarily does not count on the unreasonableness of the delay where a prompt presentment issue is involved.").

9

> However, our cases have never held that the police may purposefully delay taking a suspect before a magistrate in order to encourage the suspect to make a statement.

213 W.Va. at 345 n.10, 582 S.E.2d at 792 n.10.

From a review of the suppression hearing transcript, as well as the audio and video recordings in this case, Detective Snuffer testified that the primary purpose of taking the Petitioner to the Kanawha County Sheriff's Office was "part of our booking procedure." The detective stated that it was the department's "normal procedure to interview people when we arrest them." The detective was definitive in his answer that "the time period spent transporting him to the station was not for the purpose of trying to gain a confession from him." Detective Snuffer and Captain Scurlock were adamant that when a defendant who has been arrested indicates that he or she is not willing to be interviewed, the individual is promptly taken to the magistrate once the booking procedure is complete.

Once the officers arrived at the sheriff's office with the Petitioner, the Petitioner was again read his *Miranda* rights and indicated on the form from which the rights were read that he was willing to make a statement. The record is clear that at the end of the fifty-five minute period in which the Petitioner was interviewed, the Petitioner was repeatedly informed by Detective Snuffer of his right to prompt presentment before the magistrate and the Petitioner agreed to waive his right to be taken directly to the magistrate in order to take the officers to the area where he discarded the knives he used to kill the

10

victim. The officers finished processing the Petitioner, then proceeded to the area where the Petitioner said he discarded the knives. After searching for the knives and not finding them, the officers returned with the Petitioner to the sheriff's office. The Petitioner was taken to the magistrate at 8:00 p.m. when the magistrate returned to duty.[9]

Based upon our review of the record before the Court, the circuit court did not err in its determination that the Petitioner's statement to law enforcement should not be suppressed because the prompt presentment statute had not been violated. *See* W. Va. Code § 62-1-5(a)(1).

## B. Conflict of Interest

The Petitioner argues that the circuit court violated his due process rights when it refused to grant his trial counsel's[10] motion to withdraw based on what the Petitioner's appellate counsel[11] now terms an "actual conflict of interest." The Petitioner argues that he is entitled to representation by conflict-free counsel and that the trial court committed

---

[9]Notwithstanding the Petitioner's waiver of his right to prompt presentment, any delay in taking the Petitioner to the magistrate that occurred when the officers transported the Petitioner back to St. Albans to search for the knives came after the Petitioner confessed to the crime, *see Fortner*, 182 W.Va. at 352, 387 S.E.2d at 819, and, therefore, will not vitiate the confession under the prompt presentment statute.

[10]The Petitioner was represented below by Jason D. Parmer.

[11]The Petitioner's appellate counsel, Crystal L. Walden, is also with the Kanawha County Public Defender's Office.

11

reversible error in denying the motion to withdraw. The State argues that the trial court did not err in denying the Petitioner's counsel's motion to withdraw due to a conflict of interest.

Approximately three weeks prior to trial, the Petitioner's counsel realized that four of the State's possible witnesses[12] had been represented by other lawyers in the Kanawha County Public Defender's Office on impeachable felonies that were unrelated to the Petitioner's case.[13] Upon learning that the Kanawha County Public Defender's Office had represented these witnesses in unrelated criminal matters, the Petitioner's counsel met with the management in the public defender's office and was instructed to file a motion to

---

[12]According to the Petitioner's Motion to Withdraw, during the Petitioner's counsel's "independent investigation of the witnesses' criminal histories in an effort to uncover convictions for crimes of dishonesty" to be used for impeachment, "it was discovered that State witnesses David Edwards, Keith Hubbard, Daniel Ward and Timothy Ward . . . [were] convicted of crimes of dishonesty and they were also represented by the Kanawha County Public Defender's Office in those cases."

[13]Diana Panucci, the managing attorney for the Kanawha County Public Defender's Office, testified at the hearing that the process in the office was that when a criminal complaint was received, she would check their "database system" to determine if they had represented any "previous victims, witnesses, . . . to see if anything triggers a conflict." According to Ms. Panucci, after she does an initial check for conflicts, which she indicated was based upon the limitations of what was in the criminal complaint, it was then incumbent upon the lawyer or the lawyer's secretary to check again for potential conflicts once discovery was received, usually after the arraignment.

Even with Ms. Panucci's explanation of how conflict checks were handled within the office, it is unclear from the record before the Court how a conflicts check was not performed on Mr. Hubbard until three weeks before trial, given that Mr. Hubbard was the Petitioner's friend and was identified by the Petitioner in his statement to police on the day he was arrested.

12

withdraw. The Petitioner's counsel filed a one-page motion to withdraw, arguing that the discovery of the prior representations

> gives rise to a conflict of interest under Rule 1.9 [of the West Virginia Rules of Professional Conduct][14] which prohibits use of information relating to a former representation to the disadvantage of the former client. Although the undersigned did not personally represent any of the aforementioned witnesses, Rule 1.10[15] extends Rule 1.9's prohibition to all lawyers associated with the Kanawha County Public Defender's Office.

(Footnotes added); *see generally* Syl. Pt. 4, *State ex rel. Verizon W. Va., Inc. v. Matish*, ___ W. Va. ___740 S.E.2d 84 (2013) ("Rule 1.9(b) of the West Virginia Rules of Professional Conduct has three primary objectives: (1) to safeguard the sanctity of the attorney-client relationship and the confidential information that is shared by a client during the course of

---

[14]West Virginia Rule of Profession Conduct 1.9 provides, in relevant part:

> A lawyer who has formerly represented a client in a matter shall not thereafter:
> (a) represent another person in the same or substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client consents after consultation; or
> (b) use information relating to the representation to the disadvantage of the former client except as Rule 1.6 or Rule 3.3 would permit or require with respect to a client or when the information has become generally known.

[15]West Virginia Rule of Professional Conduct 1.10 provides, in relevant part:

> (a) While lawyers are associated in a firm, none of them shall knowingly represent a client when any one of them practicing alone would be prohibited from doing so by Rules 1.7, 1.8(c), 1.9 or 2.2.

13

an attorney-client relationship; (2) to protect from disclosure the confidential information revealed by a client to his/her attorney during the course of an attorney-client relationship; and (3) to prohibit an attorney from using such confidential information adversely to his/her former client.").

The focus at the hearing on the motion was on Keith Hubbard, who was a key witness for the prosecution.[16] Mr. Hubbard had two felony convictions for credit card forgery and entering without breaking from 2004, in which matters he was counseled by a different lawyer, not the Petitioner's counsel, who worked for the public defender's office. Mr. Hubbard also had a more recent charge in 2010 for possession of a stolen vehicle; he was again represented by a different attorney from the public defender's office and had pled guilty to that charge. Mr. Hubbard's sentencing for that offense was still within the 120 day time frame in which he could file a motion to reconsider the sentence.[17]

The Petitioner's counsel stated to the trial court that he had not represented any of the potential witnesses involved in the Petitioner's case. The attorney also told the court

[16]At trial, Mr. Hubbard was the only witness of the four named in the Petitioner's motion to withdraw who actually testified on behalf of the prosecution.

[17]There is no evidence in the record, nor was there any evidence presented before the trial court, that indicates that Mr. Hubbard was promised anything for his testimony in the instant case, such as a recommendation from the prosecution that a Rule 35(b) motion, should one be filed, be granted by the court overseeing his previous conviction and sentencing relating to the possession of the stolen vehicle charge.

14

that he had not accessed any confidential information involving any of the public defender's prior clients at issue in the motion. Further, the attorney informed the trial court that the extent of what he would use in cross-examination of Mr. Hubbard would be what was part of the public record, i.e., complaints and criminal records.

The trial court inquired of the Petitioner's counsel as to whether he had conferred with the Petitioner about the motion to withdraw and whether there was "anything that the Court would need to place on the record regarding his [referring to the Petitioner] position on this?" The Petitioner's counsel responded:

> Well, I have spoken to him about the matter and, of course, you know, I can't speak for him, and I don't know whether I should, but I think that he seems to be satisfied with what we've done so far in his representation. . . . I have spoken with Mr. Rogers about the situation. I think he understands, you know, the problem that we have, or the problem that's presented itself. . . .
> THE COURT: So, Mr. Rogers, you feel that based on any conversation you had prior to this with your attorney and what you've heard today, you understand the nature of the motion that was filed here today?
> MR. ROGERS: (Defendant nods his head up and down affirmatively.)

The trial court proceeded to go through its options of either granting or denying the motion to withdraw. The court asked the Petitioner: "Have you been satisfied with the representation you've received thus far?" The Petitioner responded, "Yes, Ma'am."

15

The trial court denied the motion to withdraw finding, in part, that "the benefit that Mr. Rogers has had of representation and the knowledge that comes and familiarity that comes with the representation you've provided, this Court finds extraordinarily important." Moreover, the court stated to the Petitioner and his counsel: "So I will respectfully deny the motion, direct you to remain, I think, voluntarily so." The Petitioner's counsel voiced no argument or objection to the trial court's ruling denying his motion to withdraw, nor is there any objection noted in the circuit court's order.[18]

In *State ex rel. Blake v. Hatcher*, 218 W.Va. 407, 624 S.E.2d 844 (2005), we stated that:

> the United States Supreme Court found the trial court should be afforded considerable latitude in making its determination to disqualify a criminal defense attorney due to a conflict of interest. *Wheat*, 486 U.S. at 163-64, 108 S. Ct. at 1699-1700. Recognizing the trial court's need for latitude, several courts have applied an abuse of discretion standard when reviewing decisions on disqualification motions. We agree that this is the appropriate standard of review.

*Blake*, 218 W.Va. at 417-18, 624 S.E.2d at 854-55 (citations omitted).

This Court has recognized that "[w]here representation is affected by an *actual*

---

[18]Indeed, the Petitioner's trial counsel, who filed the original notice of intent to appeal with this Court, did not assign as error the trial court's ruling on the conflict of interest issue.

16

conflict of interest, the defendant cannot be said to have received effective assistance of counsel as required by the Sixth Amendment." *Blake*, 218 W.Va. at 413-14, 624 S.E.2d at 850-51 (emphasis added); *accord State ex rel. Humphries v. McBride*, 220 W.Va. 362, 369, 647 S.E.2d 798, 805 (2007).

Although in this case the attorney-client relationship was already well-established between the Petitioner and his attorney before a potential conflict of interest was discovered, for guidance on the conflict of interest issue raised, the Court turns to syllabus point three of *State ex rel. Youngblood v. Sanders*, 212 W.Va. 885, 575 S.E.2d 864 (2002), wherein we held that

> [b]efore disqualification of counsel can be ordered on grounds of conflict arising from confidences presumably disclosed in the course of discussions regarding a prospective attorney-client relationship, the court must satisfy itself from a review of the available evidence, including affidavits and testimony of affected individuals, *that confidential information was in fact discussed*.

(Emphasis added); *see Blake*, 218 W.Va. at 414 n.4, 624 S.E.2d at 851 n.4 ("'More than a *mere possibility* of a conflict, however, most be shown. The Sixth Amendment is implicated only when the representation of counsel is adversely affected by an *actual* conflict of interest.'") (quoting *U.S. v. Tatum*, 943 F.2d 370, 375 (4th Cir. 1991)). Further, "[w]hen the information that is the subject of a disqualification motion predicated on prospective representation was 'generally known' or otherwise disclosed to individuals other than

17

prospective counsel, the information cannot serve as a basis for disqualification under Rule 1.9 of the Rules of Professional Conduct." *Youngblood*, 212 W.Va. at 886, 575 S.E.2d at 865, Syl. Pt. 4.

While the Petitioner goes to great lengths in arguing that an actual conflict existed below, the record simply does not support that claim. The Petitioner's trial counsel unequivocally stated at the hearing below that he had not represented Mr. Hubbard, or any of the State's witnesses who were clients of the Kanawha County Public Defender's Office, nor had he accessed any confidential information about Mr. Hubbard from the Kanawha County Public Defender's Office. Succinctly stated, the Petitioner's counsel was not privy to any confidential information arising out of the Kanawha County Public Defender's Office's prior representations of Mr. Hubbard. He further stated to the trial court that the information that he would use for impeachment purposes on the witness at issue was a matter of public record.[19]

Based upon our review of the facts of this case and the law concerning disqualification of defense counsel, disqualifying the Petitioner's trial counsel on the basis of conflict of interest would have been inappropriate as there was no actual conflict and a

---

[19]According to the record, when Mr. Hubbard testified during the Petitioner's trial, it was the State that brought out his prior convictions, not the Petitioner during cross-examination.

18

"mere possibility" of a conflict is insufficient to disqualify defense counsel.[20] *Blake*, 218 W. Va. at 414 n.4, 624 S.E.2d at 851 n.4. The circuit court, therefore, did not err in denying the Petitioner's counsel's motion to withdraw.

Further, notwithstanding the lack of an actual conflict of interest in this case, this Court has also stated in *State v. Reed*, 223 W.Va. 312, 674 S.E.2d 18 (2009), *cert. denied*, 558 U.S. 913 (2009), that "'[a]n indigent criminal defendant may demand different counsel for good cause, such as the existence of a conflict of interest or, if the potential conflict is disclosed in a timely fashion, he may elect to waive his rights and keep the court appointed counsel.'" *Id*. at 317, 674 S.E.2d at 23 (quoting *State v. Reedy*, 177 W.Va. 406, 411, 352 S.E.2d 158, 163 (1986)). In this case, the Petitioner's counsel explained the potential conflict of interest issue to the Petitioner and the trial court also inquired of the Petitioner regarding the issue and the Petitioner stated that he was satisfied with the representation he had received from his trial counsel. Additionally, there were no objections to the trial court's ruling denying the motion to withdraw either during the hearing or in the court's order. Consequently, the Petitioner can not agree to or express satisfaction with his trial counsel's representation below relative to the potential conflict of interest and then complain about that representation to this Court. *See State v. Johnson*, 197 W.Va. 575, 582,

---

[20]Further, because no actual conflict of interest existed in this case, we decline to address the Petitioner's arguments regarding imputed disqualification. *See* W. Va. R. Pro. Cond. 1.10.

476 S.E.2d 522, 529 (1996), *superseded by rule on other grounds as recognized in State v. Larry A.H.*, No. 11-1357, ___ W. Va. ___, ___ S.E.2d ___, 2013 WL 1500647 (W. Va. filed April 11, 2013) ("A judgment will not be reversed for any error in the record introduced by or invited by the party seeking reversal." (internal quotations and citations omitted)); *State v. Crabtree*, 198 W.Va. 620, 627, 482 S.E.2d 605, 612 (1996) ("Having induced an error, a party in a normal case may not at a later stage of the trial use the error to set aside its immediate and adverse consequences."). Consequently, we find that the alleged conflict of interest claim was waived by the Petitioner.

## C.   Prosecutor's Closing Argument

The Petitioner last asserts that the prosecutor's closing arguments denied the Petitioner his due process right to a fair trial. The Petitioner contends that the prosecutor grossly misstated the law regarding first degree murder, referenced facts not in the record, and made multiple assertions not supported by the evidence over the defense counsel's objections.[21] The State, however, argues that the trial court did not err in denying the

---

[21]The Petitioner argues that "[m]isrepresentation of elements of first degree murder is something this same prosecutor [referring to the Kanawha County Prosecutor, Mark Plants], who is the elected prosecutor of Kanawha County, has done in another high profile murder case [referring to the Rhonda Stewart case]." *See State v. Stewart*, 228 W.Va. 406, 719 S.E.2d 876 (2011). The Petitioner further contends that "Mr. Plants has vowed to retry
(continued...)

Petitioner's motion for a new trial on the basis of alleged prosecutorial misconduct due to the prosecutor's comments during closing argument.

Before reviewing the prosecutor's remarks, we note that prior to closing arguments, the trial court instructed the jury that closing arguments were just that–argument–not evidence. Further, the trial court properly instructed the jury on premeditation, as it pertains to the duration of time to form it, as well as how and when voluntary intoxication reduces first-degree murder to second degree murder.[22]

We first examine the prosecutor's alleged misstatement of the law regarding first degree murder. The Petitioner argues that the prosecutor misstated the law relating the element of premeditation necessary for first degree murder by telling the jurors that "it only takes a moment to plan ahead, it only takes a moment to premeditate . . . . He [the Petitioner]

_____

[21](...continued)
Ms. Stewart in the media on multiple occasions, and has since began [sic] that process." The Petitioner also attaches a portion of the Rhonda Stewart transcript and a newspaper article regarding the Rhonda Stewart case in the appendix record. The Rhonda Stewart case is not before this Court and we caution counsel to refrain from including matters before this Court that were not part of the record below. *See* W. Va. R.A.P. 6(a) ("The record consists of the papers and exhibits filed in the proceedings in the lower tribunal, the official transcript or recording of proceedings, if any, and the docket entries of the lower tribunal."); *see also* W. Va. R.A.P. 6(f) (providing for the imposition of sanctions against attorneys "who unreasonably and vexatiously increase the costs of litigation through the inclusion of unnecssary material in the appendix or designated record.").

[22]The Petitioner raises no error regarding the instructions given by the trial court.

premeditated it–it only takes a moment."

> Specifically, during closing argument, the prosecutor stated:
>
> The gist of his argument that he just made was that it's not first degree murder because he was so intoxicated he couldn't plan ahead or he couldn't premeditate what he did. Well, it only takes a moment to plan ahead, it only takes a moment to premeditate. And I will submit to you the evidence shows that when he opens those knives and approaches her, he's thinking about killing her. What else would he be doing with the knives? And then you know how I know he intended to kill her? You intend the natural consequences of your actions. He premeditated it–it only takes a moment–and then he intended to kill her, ladies and gentlemen.

The Petitioner's counsel did not object to what the Petitioner now characterizes as a misstatement of the law regarding premeditation.

While the Petitioner argues that "[t]he prosecutor's improper misstatement of the law is plain error," we decline to invoke the plain error doctrine regarding alleged misstatement of law made by the prosecutor. *See* Syl. Pt. 7, *State v. Miller*, 194 W. Va. 3, 459 S.E.2d 114 (1995) ("To trigger application of the 'plain error' doctrine, there must be (1) an error; (2) that is plain; (3) that affects substantial rights; and (4) seriously affects the fairness, integrity, or public reputation of the judicial proceedings."). This Court held in syllabus point five of *State v. Guthrie*, 194 W. Va. 657, 461 S.E.2d 163 (1995), that

> [a]lthough premeditation and deliberation are not measured by any particular period of time, there must be some period between the formation of the intent to kill and the actual

22

killing, which indicates the killing is by prior calculation and design. This means there must be an opportunity for some reflection on the intention to kill after it is formed.

In light of the law enunciated in *Guthrie*, specifically that premeditation is not measured by a particular period of time, we do not find that there was error in the prosecutor's argument regarding premeditation.

Additionally, the Petitioner claims error stemming from several remarks about the evidence presented during trial. We examine these remarks individually. The prosecutor stated during his closing argument:

I'll submit to you after he plunged the knives in her neck, he stood there and the blood from that knife dripped on that floor.

The Petitioner's counsel objected to this statement as not supported by the evidence and the objection was sustained.

The prosecutor also stated during his closing argument:

He pulls the knives out–again, plenty of time to plan ahead– pulls the knives out, walks across the room, unfolds them–

The Petitioner's counsel objected to this statement as not supported by the evidence and the prosecutor was warned by the trial court to "make sure it comports with what the evidence was."

The Petitioner also asserts that the following statement made by the prosecutor

23

during his closing argument was not supported by the evidence:

> He hit right where he was aiming . . . . [H]e severed both
> carotid arteries.

The Petitioner's counsel, after the prosecutor made this remark, stated: "The evidence was not that both were severed. One was severed, the other one was not." The trial court stated that "[t]he jury will recall." The prosecutor stated: "[t]he other–one was severed partial." The Petitioner's counsel then commented: "It was incised."

> Next, the Petitioner objected to the following comment made by the prosecutor:
>
> But I'll submit to you that after he stabbed her, he reached out
> and cleaned his knife off on her shirt.[23]

The trial court ruled on the Petitioner's objection as follows: "I'm going to let the jury recall if–he's making argument based on the evidence. The jury can figure out what the experts–"

The Petitioner's counsel stated:

> But if the expert[24] can't say that, then I don't know why he's
> allowed to. Because the expert did not say that that's where–
> you know that's a pocket knife. He didn't say that, because he
> couldn't. . . .

(Footnote added). The trial court then noted the Petitioner's objection and stated to the

---

[23]The prosecutor was arguing that the stain on the shirt appeared to be in the shape of a pocket knife.

[24]The expert referred to was Detective Scurlock, who testified that there was a "transfer stain" on the shirt worn by Ms. Amos which showed that a "bloody object" made contact with the fabric of the shirt.

prosecutor: "And you know where the line is."

Finally, the Petitioner argues that the following statement by the prosecutor was intended to inflame the jury:

> I humbly and respectfully request that you all find him guilty of first degree murder without mercy.
>
> Ladies and gentlemen, he'll get to enjoy three meals a day. Laura Amos won't get to enjoy that.

The Petitioner's counsel objected to this argument and his objection was sustained by the trial court.

"A judgment of conviction will not be set aside because of improper remarks made by a prosecuting attorney to a jury which do not clearly prejudice the accused or result in manifest injustice." Syl. Pt. 5, *State v. Sugg*, 193 W. Va. 388, 456 S.E.3d 469 (1995). Additionally, in syllabus point six of *Sugg*, we held:

> Four factors are taken into account in determining whether improper prosecutorial comment is so damaging as to require reversal: (1) the degree to which the prosecutor's remarks have a tendency to mislead the jury and to prejudice the accused; (2) whether the remarks were isolated or extensive; (3) absent the remarks, the strength of competent proof introduced to establish the guilt of the accused; and (4) whether the comments were deliberately placed before the jury to divert attention to extraneous matters.

*Id.* at 393, 456 S.E.2d at 474, Syl. Pt.6.

25

Applying the *Sugg* factors to the instant case, the State concedes that the prosecutor's comments were "not in absolute keeping with the evidence and law." We agree with this concession; however, while "not in absolute keeping with the evidence and the law," the remarks, nonetheless, were argument that neither misled the jury nor prejudiced the accused in light of the of the evidence in this case. Further, our review of the entire closing argument reveals that the comments were isolated and not extensive. Moreover, without the remarks, the evidence introduced at trial to establish the Petitioner's guilt, including the Petitioner's confession to committing the murder, was overwhelming. Finally, the comments were not deliberately placed before the jury to divert attention to extraneous matters. *See id.*

Consequently, this Court finds that the trial court did not err in denying the Petitioner's motion for a new trial as the prosecutor's remarks neither clearly prejudiced the accused, nor resulted in manifest injustice. *Id.* at 393, 456 S.E.3d 474, Syl. Pt. 5.

## IV. Conclusion

Based on the foregoing, the decision of the Circuit Court of Kanawha County is affirmed.

Affirmed.