# STATE OF WEST VIRGINIA
# SUPREME COURT OF APPEALS

**State of West Virginia,**
**Plaintiff Below, Respondent**

**vs) No. 13-1070** (Roane County 12-F-41)

**Adam Scott Lytle,**
**Defendant Below, Petitioner**

**FILED**

October 17, 2014

RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Adam Scott Lytle, by counsel Duane C. Rosenlieb Jr., appeals the judgment order of the Circuit Court of Roane County, entered on July 25, 2013, finding him guilty of murder in the first degree subsequent to a jury trial. The State appears by counsel Benjamin F. Yancey III.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the order of the circuit court is appropriate under Rule 21 of the Rules of Appellate Procedure.

I.

The circumstances of the crime itself are undisputed for the purpose of this appeal. Several individuals, including petitioner and the victim, Jeremy Smith, had been drinking, watching movies, playing videogames, wrestling, and lifting weights at the home of Slade Thorn in December of 2011, when petitioner suddenly jumped up, grabbed Thorn's shotgun, shot Smith twice, and threatened at least one individual. Petitioner asked Thorn to drive him away and help hide Smith's body. Thorn agreed. The two men left the residence, with petitioner pointing the gun at Thorn. Eventually, Thorn convinced petitioner to lower the shotgun, and then took it away. Thorn fired two shots—either in the air or in the direction of petitioner—and petitioner ran into nearby woods. West Virginia State Police Trooper Joshua Bragg was dispatched to investigate. While surveying the scene, Trooper Bragg discovered that petitioner was on the phone with the 911 dispatcher. He convinced petitioner to exit the woods, and petitioner was ordered at gunpoint to the ground, handcuffed, and placed in a local sheriff's deputy's cruiser at around 2 a.m.[1] He was arraigned approximately nine and one-half hours later. After he was taken

---

[1] Though petitioner had to wait in the car while Trooper Bragg completed his investigation of the crime, the cruiser was running, and the heat was turned on.

1

into custody, but prior to presentment to the magistrate, petitioner gave a statement implicating himself in the murder. Petitioner was found guilty by a jury of his peers in July of 2013 of the first-degree murder of Smith, and later was sentenced to a period of life in the state penitentiary, with the possibility of parole.

Petitioner presents two assignments of error on appeal. He argues, first, that the circuit court abused its discretion in giving "an unnecessary cumulative instruction permitting the jury to conclude . . . [p]etitioner had 'consciousness' of his own guilt;" and, second, that the circuit court erred in denying his motion to suppress the statement that petitioner argues was taken in violation of the prompt presentment rule.

II.

We begin with petitioner's first assignment of error. In this Court's review of the petitioner's assertion regarding instructional error, the following standards are applicable:

> A trial court's instructions to the jury must be a correct statement of the law and supported by the evidence. Jury instructions are reviewed by determining whether the charge, reviewed as a whole, sufficiently instructed the jury so they understood the issues involved and were not misled by the law. A jury instruction cannot be dissected on appeal; instead, the entire instruction is looked at when determining its accuracy. A trial court, therefore, has broad discretion in formulating its charge to the jury, so long as the charge accurately reflects the law. Deference is given to a trial court's discretion concerning the specific wording of the instruction, and the precise extent and character of any specific instruction will be reviewed only for an abuse of discretion.

Syl. Pt. 4, *State v. Guthrie*, 194 W.Va. 657, 461 S.E.2d 163 (1995). Guided by this precedent, this Court addresses the issue presented in this case.

As noted above, petitioner was handcuffed and placed in the police cruiser at about 2 a.m. He remained there while Trooper Bragg completed tasks necessary to the investigation, until he was transported to the Roane County State Police detachment, arriving at the detachment at about 4:30 a.m. Approximately twenty minutes after arrival, and after signing an acknowledgment that he had been advised of his *Miranda* rights[2], petitioner gave Trooper Bragg a recorded statement claiming that Thorn had shot and killed Smith. After giving that statement, petitioner told Trooper First Class Robert Richards in an unrecorded interview that he accidentally shot Smith. This confession prompted a second recorded statement, taken by Sergeant Frederick Hammack.[3] Petitioner argues that he was prejudiced by the following instruction, addressing the conflicting statements, given at trial:

---

[2] *See Miranda v. Arizona*, 384 U.S. 436 (1966).

[3] The statement given to Trooper Hammack—presumably of seminal importance to the issue before us—was played for the jury but not transcribed into the record. Neither the transcript of the original recording, nor the recording itself, has been made part of the appendix record on

2

The jury is further instructed that if you find from the evidence and believe beyond a reasonable doubt that a pretrial statement given by the defendant to the police as to matters under investigation in this case was willfully and deliberately false or misleading, such fact may be considered by you as a circumstance indicating the defendant's consciousness of guilt. The circumstances should be carefully considered, since a false or misleading statement may be attributed to a number of reasons other than consciousness of guilt. The jury is cautioned, however, that if they find such a pretrial statement to be willfully and deliberately false or misleading, that is but one factor which they may consider in weighing the evidence on the defendant's guilt or innocence.

When the court informed counsel it intended to give the above instruction, the following transpired:

| | |
|---|---|
| The court: | I will hear any objection anybody has to that. |
| [Assistant pros.] Mr. Downey: | State has none, your Honor. |
| [Def. counsel] Mr. Mitchell: | I don't really like that, Judge, but I don't know that I can argue against it. |
| The court: | Well— |
| Mr. Mitchell: | That applies for everybody, all the witnesses, right? |
| The court: | No. It applies to the defendant's pretrial statement to the law enforcement officer. |
| Mr. Mitchell: | What about a witness statement pretrial that he changes? |
| The court: | That he changes? |
| Mr. Mitchell: | Yes, sir. We have that in one of the witness's statements. |
| The court: | Oh, no, that is in there. Contradictory statements? |
| Mr. Mitchell: | Yes. |

appeal. We are thus unable to fully evaluate the differences in petitioner's statements. Nevertheless, we find that the absence of the statement does not affect the analysis herein.

3

The court:                          Yes. That is in there.

Mr. Mitchell:                       Okay.

Petitioner argues that the above exchange demonstrates a timely objection on his behalf to the circuit court's instruction. We disagree. "To preserve an issue for appellate review, a party must articulate it with such sufficient distinctiveness to alert a [trial] court to the nature of the claimed defect." *State ex rel. Cooper v. Caperton*, 196 W.Va. 208, 216, 470 S.E.2d 162, 170 (1996) (citations omitted). Not only did petitioner's trial counsel fail to articulate any claim of defect in the court's instruction, he affirmatively stated, "I don't know that I can argue against it." The circuit court was provided no notice that would have "afford[ed] an opportunity to correct the problem before irreparable harm occur[red]." *See State v. LaRock*, 196 W.Va. 294, 316, 470 S.E.2d 613, 635 (1996).

Nevertheless, the "raise or waive" rule does not bar our review where, in extraordinary circumstances, trial court error is plain. "The 'plain error' doctrine grants appellate courts, in the interest of justice, the authority to notice error to which no objection has been made." *State v. Miller*, 194 W.Va. 3, 18, 459 S.E.2d 114, 129 (1995). "Under plain error, appellate courts will notice unpreserved errors in the most egregious circumstances. Even then, errors not seasonably brought to the attention of the trial court will justify appellate court intervention only where substantial rights are affected." *LaRock*, 196 W.Va. at 316, 470 S.E.2d at 635.[4] We explained in *LaRock*:

> To satisfy the plain error standard, a court must find: (1) there was error in the trial court's determination; (2) the error was plain or obvious; and (3) the error affected "substantial rights" in that the error was prejudicial and not harmless. [*Miller*,] 194 W.Va. at 18, 459 S.E.2d at 129, *citing United States v. Olano*, 507 U.S. 725, 730–32, 113 S.Ct. 1770, 1776, 123 L.Ed.2d 508, 518 (1993). If these criteria are met, this Court may, in its discretion, correct the plain error if it "'seriously affect[s] the fairness, integrity or public reputation of judicial proceedings.'" *Olano*, 507 U.S. at 732, 736, 113 S.Ct. at 1776, 1779, 123 L.Ed.2d at 518, 521, *quoting United States v. Atkinson*, 297 U.S. 157, 160, 56 S.Ct. 391, 392, 80 L.Ed. 555, 557 (1936).

*Id.* at 316-17, 635-36.

Applying the considerations described above, we find no plain error that would compel us to reverse petitioner's conviction based on the circuit court's having given the "consciousness of guilt" instruction. Though petitioner goes to great lengths in urging us to find that his

---

[4] Where, however, "there has been a knowing and intentional relinquishment or abandonment of a known right, there is no error and the inquiry as to the effect of a deviation from the rule of law need not be determined." Syl. pt. 8, in part, *State v. Miller*, 194 W.Va. 3, 459 S.E.2d 114.

4

inconsistent statements could only be used to aid the jury's assessment of petitioner's credibility, and that the instruction improperly elevated the misleading statement to evidence of guilt, we note that the circuit court, without objection from counsel, crafted its instruction using language from an opinion of this Court:

> In addition, it appears that evidence of the appellant's false declarations was clearly admissible. Since the appellant was the only witness who testified as to what occurred on the night of his wife's death, his credibility was a critical issue at trial. The State was entitled to offer evidence of the appellant's prior inconsistent statements for purposes of impeachment. [Citations omitted.] Moreover, like evidence of flight, evidence of false or misleading statements given by the accused to the police as to matters under investigation is generally held to be relevant and admissible as a circumstance indicating consciousness of guilt. *See State v. Richey*, 171 W.Va. 342, 298 S.E.2d 879 (1982); *State v. Payne*, 167 W.Va. 252, 280 S.E.2d 72 (1981). *See generally* 22A C.J.S. *Criminal Law* § 636 (1936). The trial court in this case properly instructed the jury that the evidence of the appellant's false report of suicide was merely a factor which they could consider in weighing the evidence on the issue of his guilt of the crime of murder. Accordingly, we find no error in the prosecution's references to the appellant's statements.

*State v. Berry*, 176 W.Va. 291, 295, 342 S.E.2d 259, 263 (1986)(emphasis added).

Nothing in *Berry* suggests that the use of evidence of misleading statements is restricted to credibility determinations; in fact, use of "moreover" in the above passage suggests that multiple uses of such evidence may be contemplated. Petitioner argues, though, that the above paragraph is without application to issues involving jury instructions. In support of this argument, he notes that the *Berry* Court followed the language quoted above with the transitional sentence, "The appellant's other assignments of error relate to the trial court's instructions to the jury." This transition, he suggests, demonstrates that the Court's discussion of misleading statements was relevant only to credibility determinations. We disagree. The *Berry* Court clearly indicated that it found that "the trial court . . . properly instructed the jury" on the issue of false or misleading statements, as evident from the language quoted above. Upon consideration of *Berry*, we find no plain error in the trial court's instruction and, thus, decline to disturb the ruling of the circuit court.

III.

We turn to petitioner's second assignment of error, in which he argues that the circuit court erred in denying his motion to suppress a statement that he gave after his arrival at the West Virginia State Police barracks. We review orders concerning motions to suppress as follows:

> When reviewing a ruling on a motion to suppress, an appellate court should construe all facts in the light most favorable to the State, as it was the prevailing party below. Because of the highly fact-specific nature of a motion to suppress,

particular deference is given to the findings of the circuit court because it had the opportunity to observe the witnesses and to hear testimony on the issues. Therefore, the circuit court's factual findings are reviewed for clear error.

Syl. Pt. 1, *State v. Lacy*, 196 W.Va. 104, 468 S.E.2d 719 (1996). Further, "[o]n appeal, legal conclusions made with regard to suppression determinations are reviewed *de novo*. Factual determinations upon which these legal conclusions are based are reviewed under the clearly erroneous standard. In addition, factual findings based, at least in part, on determinations of witness credibility are accorded great deference." Syl. Pt. 3, *State v. Stuart*, 192 W.Va. 428, 452 S.E.2d 886 (1994).

Prior to trial, petitioner filed a motion to suppress his confession, arguing that he was not promptly presented to a magistrate.[5] The motion to suppress was denied. "Our prompt presentment rule contained in W.Va. Code, [§] 62–1–5, and Rule 5(a) of the West Virginia Rules of Criminal Procedure, is triggered when an accused is placed under arrest. Furthermore, once a defendant is in police custody with sufficient probable cause to warrant an arrest, the prompt presentment rule is also triggered." Syl. Pt. 2, *State v. Humphrey*, 177 W.Va. 264, 351 S.E.2d 613 (1986). However, we have previously recognized that "[c]ertain delays such as delays in the transportation of a defendant to the police station, completion of booking and administrative procedures, recordation and transcription of a statement, and the transportation of a defendant to the magistrate do not offend the prompt presentment requirement." *State v. Sugg*, 193 W.Va. 388, 395–96, 456 S.E.2d 469, 476–77 (1995) (*citing State v. Ellsworth J.R.*, 175 W.Va. 64, 70, 331 S.E.2d 503, 508 (1985)) (footnote omitted). Importantly, in *State v. Rogers*, 231 W.Va. 205, 744 S.E.2d 315 (2013) citing Syllabus Point 4 of *State v. Humphrey*, 177 W.Va. 264, 351 S.E.2d 613 (1986), we explained that "[o]rdinarily the delay in taking an accused who is under arrest to a magistrate after a confession has been obtained . . . does not vitiate the confession under our prompt presentment rule."

---

[5] W.Va. Code § 62-1-5(a)(1) provides:

An officer making an arrest under a warrant issued upon a complaint, or any person making an arrest without a warrant for an offense committed in his presence or as otherwise authorized by law, shall take the arrested person without unnecessary delay before a magistrate of the county where the arrest is made.

In addition, Rule 5 of the West Virginia Rules of Criminal Procedure requires that:

any person making an arrest without a warrant shall take the arrested person without unnecessary delay before a magistrate within the county where the arrest is made. If a person arrested without a warrant is brought before a magistrate, a complaint shall be filed forthwith which shall comply with the requirements of Rule 4(a) with respect to the showing of probable cause. When a person, arrested with or without a warrant or given a summons, appears initially before the magistrate, the magistrate shall proceed in accordance with the applicable subdivision of this rule.

It is undisputed that petitioner was handcuffed and placed in a police cruiser at around 2 a.m., and that he remained there while Trooper Bragg concluded his on-site investigative duties and waited for the rest of the investigation team to arrive. The two men left the scene at about 4 a.m. and arrived at the State Police detachment at about 4:30 a.m., at which time Trooper Bragg read petitioner his *Miranda* rights and had petitioner sign the acknowledgement form. It is apparent that this time was spent in the execution of administrative duties and the transport of petitioner, and thus did not offend the prompt presentment standard.[6] Petitioner's initial recorded statement—in which he stated that Thorn had killed Smith—began at 4:53 a.m. and concluded at 5:23 a.m. As noted above, time spent in the recording of petitioner's statement also does not offend the prompt presentment standard.[7]

Upon completion of the statement taken by Trooper Bragg, at 5:25 a.m., Sgt. Hammack spoke with petitioner, and petitioner requested that he be given a polygraph examination. Petitioner was told that the only available polygraph examiner, TFC Richards, was in Beckley, and there would be a delay of at least two hours while TFC Richards traveled to Spencer. Petitioner agreed to the wait. He was not interrogated while waiting, but was given cake and a beverage. TFC Richards arrived at the Roane County detachment at approximately 9:30 a.m., advised petitioner of his *Miranda* rights, and began to interview petitioner.[8] The period that elapsed between petitioner's request for the administration of a polygraph examination and the time that TFC Richards initiated his interview does not offend the prompt presentment standard, because any delay occurring during that time was triggered by petitioner's stated desire to submit to a polygraph examination.

Sometime during the unrecorded interview that TFC Richards began at 9:30 a.m. in preparation for the polygraph examination, petitioner confessed to killing Thorn. TFC Richards then asked Sgt. Hammack to take a recorded statement from petitioner. Petitioner gave the second recorded statement to Sgt. Hammack beginning at about 10:30 a.m. and concluding at 10:41 a.m.[9] Inasmuch as the confession was then obtained, any delay occasioned between 10:41 a.m. and the time of presentation to the magistrate is inconsequential, at least under the circumstances here described, to our inquiry. *See Rogers*, 231 W.Va. at 211, 744 S.E.2d at 321. Petitioner was transported to the Magistrate Court of Roane County for arraignment at about 11:30 a.m.

Having given thorough consideration to the timeline of events described above, we find no evidence of "prolonged interrogation" and no evidence of "delay which precedes, and can

---

[6] It is undisputed that petitioner was not questioned while he waited in the police cruiser or during transport.

[7] At no time did petitioner ask to stop any interview conducted by any of the officers mentioned herein.

[8] *See Miranda*, 384 U.S. 436.

[9] No polygraph examination was given.

therefore be used to induce, the confession" *See State v. Rogers*, 231 W.Va. 205, 211, 744 S.E.2d 315, 321 (2013)(citations omitted). We accordingly find no error in the circuit court's denial of petitioner's motion to suppress his statement.

For the foregoing reasons, we affirm.

Affirmed.

**ISSUED:** October 17, 2014

**CONCURRED IN BY:**

Justice Brent D. Benjamin
Justice Margaret L. Workman
Justice Menis E. Ketchum
Justice Allen H. Loughry II

**DISSENTING:**

Chief Justice Robin Jean Davis

8