351 S.E.2d 613

**STATE of West Virginia**

v.

**Terry Wayne HUMPHREY.**

No. 16895.

Supreme Court of Appeals of West Virginia.

Dec. 10, 1986.

James C. Blankenship, III, Fayetteville, for appellant.

Charles Brown, Atty. Gen. and Paul Reese, Asst. Atty. Gen., Charleston, for appellee.

MILLER, Chief Justice:

Terry Humphrey was convicted by a jury in the Circuit Court of Fayette County of first degree murder without a recommendation of mercy. The main issue raised by the defendant involves the admissibility of a written statement he gave to the police, which the defendant contends was taken in violation of our prompt presentment statute. Other asserted errors relate to various evidentiary rulings and the failure to give a lesser included offense instruction. After examining the record and all of the issues raised by the defendant, we conclude the trial court committed no reversible error and, therefore, we affirm the conviction.

On the night of February 17, 1984, Odell Washington was shot once in the chest in the alley beside his grocery store. After being shot, he managed to walk to the front of the store where he collapsed and died from the shotgun wound. His body was discovered soon thereafter.

On the following day, Hudon Nicholes went to the State police headquarters in Oak Hill and related that in a conversation he had with the defendant prior to the shooting, the defendant admitted waiting outside of Mr. Washington's store on a prior occasion with the intent to rob Mr. Washington, but did not do so at that time. Mr. Nicholes agreed to aid the State police in their investigation of the shooting by meeting with the defendant while wearing a transmitting device that allowed the State police to listen and record their conversation. In the course of one of these tape-recorded discussions with the defendant, he again mentioned to Mr. Nicholes that a few days prior to the shooting, he had gone down to Mr. Washington's store with a butcher knife to rob him, but for some reason changed his mind.

Based on this information, on February 20, 1984, at about 8:15 in the evening, State police officer Gary McGraw contacted the defendant at his sister's house and asked him if he would voluntarily go to State police headquarters to answer some questions regarding the shooting of Mr. Washington. The defendant agreed to do so voluntarily and was driven to the headquarters in a State police cruiser.

When they arrived at the headquarters, the defendant was taken to a room by Officer McGraw who advised him of his *Miranda* rights[1] and asked some preliminary questions. The testimony at the suppression hearing, at which the defendant did not testify, indicated that several other State police officers were in and out of the room during this time. The defendant was not restrained by handcuffs or any other devices, was not under arrest, and, according to the State police officers, was free to leave at any time. The defendant initially denied any involvement in the shooting. A tape recording of his conversation with Mr. Nicholes was then played for the defendant. Upon further questioning about the shooting, the defendant started crying and stated, "I did it." This statement was made at approximately 9:00 p.m. which was shortly after he had arrived at the headquarters.

After this oral statement, Officer McGraw again read the *Miranda* rights to the defendant from a waiver of rights form. The defendant was allowed to read the rights form and subsequently he signed it. The time noted on the rights form was 9:10 p.m. After the defendant signed the waiver of rights form, Officer McGraw proceeded to question the defendant in more detail about the incident and recorded his answers by writing them down on a legal pad. He began taking this written statement at about 9:16 p.m.

According to the suppression hearing testimony, it took approximately one hour and fifteen minutes for Officer McGraw to complete the defendant's written statement which consisted of eight pages. After the questioning was finished, the defendant read and signed each page of the statement.

In his statement, the defendant explained that on February 17, 1984, he had been drinking beer and worrying about some money he owed. At some time after 8:00 p.m., he went to his father's house and obtained a shotgun. Thereafter, at approximately 10:15 p.m., he waited in the alley beside Mr. Washington's store with the loaded shotgun for about one hour. When Mr. Washington walked into the alley, the defendant said, "Hold it. This is a stick-up." When Mr. Washington subsequently yelled for help, the defendant fired the shotgun, panicked, and ran. He also stated that after hiding the shotgun in two different locations, he retrieved the shotgun and gave it to someone to pay off a debt. While the interrogation continued, a State police officer went to the address where the defendant said the shotgun would be found and recovered the shotgun at approximately 10:17 p.m.

When the statement was completed around 10:30 p.m., the State police sought to corroborate some of the information given by the defendant. Officers were sent to a dumpster described by the defendant, where he claimed to have disposed of some articles, but were unable to find anything. The officers then proceeded to the home of the defendant's parents, where the defendant claimed the clothes he wore on the night of the shooting would be found. At 11:00 p.m., the State police retrieved the clothing described by the defendant from his mother, who had consented to the search.

During this time, the defendant remained at State police headquarters. The defendant was taken before a magistrate shortly after midnight. At the presentment, one State police officer overheard the defendant explain to his mother, "Mommy, I didn't mean to kill him."

At trial, the State proceeded on a felony-murder theory, contending the murder occurred in the course of an attempted robbery, and also under a first degree murder theory. As previously noted, the jury found the defendant guilty of first degree murder with no recommendation of mercy.

## I.

## ADMISSIBILITY OF WRITTEN STATEMENT

The defendant argues that his written confession should not have been admitted

---

**1.** *See Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, 10 A.L.R.3d 974 (1966).

because the State failed to promptly present him to a magistrate, in violation of W.Va.Code, 62–1–5, and Rule 5(a) of the West Virginia Rules of Criminal Procedure.[2] In *State v. Persinger*, 169 W.Va. 121, 286 S.E.2d 261 (1982), we discussed at some length the rationale behind this rule and concluded in Syllabus Point 6:

> "The delay in taking the defendant to a magistrate may be a critical factor where it appears that the primary purpose of the delay was to obtain a confession from the defendant."[3]

We recognized in *Persinger* the general rule that the voluntariness of a defendant's confession depends upon the totality of the circumstances under which it was obtained[4] and we said that "an unjustifiable and unreasonable delay in taking the accused before a magistrate after his initial arrest may in itself be sufficient to render a confession involuntary." *Persinger*, 169 W.Va. at 137–38, 286 S.E.2d at 271.

Later, in Syllabus Point 1 of *State v. Guthrie*, 173 W.Va. 290, 315 S.E.2d 397 (1984), we broadened Syllabus Point 6 of *Persinger* to include the totality test, but still stressed the importance of our prompt presentment rule:

> " 'The delay in taking a defendant to a magistrate may be a critical factor [in the totality of circumstances making a confession involuntary and hence inadmissible] where it appears that the primary purpose of the delay was to obtain a confession from the defendant.' Sylla-

bus Point 6, *State v. Persinger*, [169 W.Va. 121], 286 S.E.2d 261 (1982), as amended."

■ Although we have not had occasion to make a precise holding on this point, it is clear that our prompt presentment rule contained in W.Va.Code, 62–1–5, and Rule 5(a) of the West Virginia Rules of Criminal Procedure, is triggered when an accused is placed under arrest. Both the statute and the rule utilize the phrase "making an arrest" followed by the command "shall take the arrested person without unnecessary delay before a magistrate."[5] Furthermore, it is clear from our cases that once a defendant is in police custody with sufficient probable cause to warrant an arrest, the prompt presentment rule is also triggered. *See, e.g., State v. Bennett*, 176 W.Va. 1, 339 S.E.2d 213 (1985); *State v. Hickman*, 175 W.Va. 709, 338 S.E.2d 188 (1985); *State v. Wyant*, 174 W.Va. 567, 328 S.E.2d 174 (1985) (per curiam); *State v. Mays*, 172 W.Va. 486, 307 S.E.2d 655 (1983); *State v. Mitter*, 169 W.Va. 652, 289 S.E.2d 457 (1982).

■ It is apparent that by confessing to the crime, the accused has given the State probable cause to arrest him. Moreover, ordinarily once an accused confesses to a crime during custodial interrogation, the police will not let him leave freely so the accused is under what we referred to in *State v. Mays*, 172 W.Va. at 489, 307 S.E.2d at 658, as "*de facto* arrest." To hold other-

2. Both of these provisions have essentially the same language: "An officer making an arrest under a warrant issued upon a complaint or any person making an arrest without a warrant shall take the arrested person without unnecessary delay before a magistrate within the county where the arrest is made." Rule 5(a), W.Va. R.Crim.P.

3. *Persinger* was decided under our prompt presentment statute, W.Va.Code, 62–1–5, and as we pointed out, 121 W.Va. at 136, 286 S.E.2d at 270, the rule we devised as the remedy for noncompliance was similar to the rule adopted by other courts under their prompt presentment statutes:

> "Several courts have viewed the delay in taking the defendant before a magistrate to be a critical factor where it appears that the primary purpose of the delay was to obtain a

confession from the defendant. *E.g., People v. White*, 392 Mich. 404, 221 N.W.2d 357 (1974), *cert. denied*, 420 U.S. 912, 95 S.Ct. 835, 42 L.Ed.2d 843 (1975); *Commonwealth v. McGeachy*, 487 Pa. 25, 407 A.2d 1300 (1979); *Briggs v. State*, 76 Wis.2d 313, 251 N.W.2d 12 (1977); *Raigosa v. State*, 562 P.2d 1009 (Wyo. 1977)."

4. In *Persinger*, 169 W.Va. at 129, 286 S.E.2d at 267, we explained: "Thus the voluntariness of a confession is an inquiry that must be gauged by the totality of the circumstances under which it was given including the background, experience and conduct of the accused." (Citations omitted). *See also State v. Clark*, 171 W.Va. 74, 297 S.E.2d 849 (1982).

5. For the full text of Rule 5 of the West Virginia Rules of Criminal Procedure, see note 2, *supra*.

wise would allow the police to avoid the prompt presentment requirement by simply delaying the formal arrest. We do not believe that the prompt presentment requirement can be skirted so easily.

 In the present case, the defendant voluntarily went with the State police to be interrogated. Several of the State police officers who were involved in the interrogation testified that the defendant was not under arrest initially and could have left at any time of his own free will. Before the interrogation, the defendant was a suspect in the case, but it is not clear, based upon the record, that the police had probable cause to arrest until he orally confessed by stating, "I did it." It was at this point shortly after 9:00 p.m. that the prompt presentment rule was triggered.

Even though the prompt presentment rule was triggered, we have recognized in a number of cases that the delay occasioned by reducing an oral confession to writing ordinarily does not count on the unreasonableness of the delay where a prompt presentment issue is involved. *See, e.g., State v. Hickman,* 175 W.Va. at 721 n. 23, 338 S.E.2d at 200 n. 23; *Matter of Mark E.P.,* 175 W.Va. 83, 91, 331 S.E.2d 813, 821 (1985); *State v. Ellsworth J.R.,* 175 W.Va. 64, 70, 331 S.E.2d 503, 508–09 (1985); *State v. Mitter,* 169 W.Va. at 657–658, 289 S.E.2d at 461. In *Ellsworth J.R.,* 175 W.Va. at 70 n. 10, 331 S.E.2d at 509 n. 10, we quoted with approval the reasoning of the Maryland Court of Appeals in *Lewis v. State,* 285 Md. 705, 718, 404 A.2d 1073, 1080 (1979), which indicated that having an oral confession put in writing protects the interests of the defendant and the State by ensuring the accuracy of the confession and by preserving its details in writing.

In the present case, promptly after the defendant made his brief oral confession that he had committed the crime, the State police officer again advised the defendant of his *Miranda* rights, obtained a signed written waiver, and proceeded to take a written statement from him. When the

written statement was completed, the defendant was allowed to read it to check its accuracy and then to sign the statement. We believe under our cases this ensuing time period of approximately one hour and fifteen minutes was reasonable and did not vitiate the confession.

The defendant was not taken to a magistrate until approximately one and one-half hours after he had completed the written statement which was about 10:30 p.m. During this time, the defendant remained at the State police headquarters while various pieces of evidence mentioned in the written statement were sought. Under our prompt presentment rule, the significant time period when an accused is in police custody is the time between the arrest or the time probable cause exists to arrest and the time a statement is obtained from the accused. In the present case, the delay in presenting the defendant to a magistrate after he had given the written statement obviously had no effect on the voluntariness of the defendant's confession.

A number of courts in other jurisdictions have also concluded that ordinarily the delay in taking an accused who is under arrest to a magistrate after a confession has been obtained from him does not vitiate the confession under a prompt presentment statute.[6] *E.g., State v. Everett,* 110 Ariz. 429, 520 P.2d 301 (en banc), *cert. denied,* 419 U.S. 880, 95 S.Ct. 144, 42 L.Ed.2d 120 (1974); *People v. Raymer,* 662 P.2d 1066 (Colo.1983) (en banc); *People v. Musil,* 37 Ill.2d 373, 227 N.E.2d 751 (1967); *State v. Carter,* 412 A.2d 56 (Me.1980); *Johnson v. State,* 282 Md. 314, 384 A.2d 709 (1978); *People v. Livingston,* 57 Mich.App. 726, 226 N.W.2d 704 (1975); *State v. Taylor,* 46 N.J. 316, 217 A.2d 1, *cert. denied,* 385 U.S. 855, 87 S.Ct. 103, 17 L.Ed.2d 83 (1966); *State v. Johnson,* 119 R.I. 749, 383 A.2d 1012 (1978); *State v. Hintz,* 318 N.W.2d 915 (S.D.1982); Annot., 28 A.L.R.4th 1121, 1178–84 (1984). The Rhode Island Supreme Court in *Johnson,* 119 R.I. at 756–57, 383 A.2d at 1017, after discussing its

---

6. We do not mean to imply that if further interrogation ensues which leads to other inculpatory evidence, that such evidence may also be admissible. This issue is not raised in the present case.

prompt presentment rule, gave the following summary:

"In short, delay, if it is to render a confession inadmissible, must have been operative in inducing the confession, and obviously only the detention that precedes a confession can have that effect. *See United States v. Mitchell,* 322 U.S. 65, 70, 64 S.Ct. 896, 898, 88 L.Ed. 1140, 1143 (1944); *United States v. Seohnlein,* 423 F.2d 1051, 1053 (4th Cir.1970); *Bailey v. United States,* 117 U.S.App.D.C. 241, 243–45, 328 F.2d 542, 544–46 (1964); *State v. Traub,* 151 Conn. 246, 249–50, 196 A.2d 755, 757 (1963)."

Therefore, we conclude the trial court committed no error in admitting the defendant's written statement into evidence.

## II.

## ADDITIONAL ASSIGNMENTS OF ERROR

### A.

■ The remaining assignments of error do not merit extended discussion. The defendant argues the trial court erred in refusing to instruct the jury on involuntary manslaughter. The following passage from the defendant's written statement is cited in support of this instruction: "When Odell got to the edge of the alley, he moved his right hand down toward his pocket. I heard him yell, 'Help. I'm being robbed.' I had two socks over my hands, and the gun went off. That's when I panicked and ran."

The State's theory of the case as submitted to the jury was that the defendant was guilty of first degree murder under the felony-murder rule. We discussed the concept of felony-murder, which is defined in W.Va.Code, 61–2–1,[7] at some length in *State v. Sims,* 162 W.Va. 212, 248 S.E.2d

834 (1978), and concluded in Syllabus Point 7:

"The crime of felony-murder in this State does not require proof of the elements of malice, premeditation or specific intent to kill. It is deemed sufficient if the homicide occurs accidentally during the commission of, or the attempt to commit, one of the enumerated felonies."

In *State v. Williams,* 172 W.Va. 295, 311, 305 S.E.2d 251, 267 (1983), we summarized the essential elements of the State's case in a felony-murder charge:

"[T]he elements which the State is required to prove to obtain a conviction of felony murder are: (1) the commission of, or attempt to commit, one or more of the enumerated felonies; (2) the defendant's participation in such commission or attempt; and (3) the death of the victim as a result of injuries received during the course of such commission or attempt." (Citation omitted).

*See also State v. Wayne,* 162 W.Va. 41, 245 S.E.2d 838 (1978).

Consequently, the fact that the defendant claimed he accidentally discharged the shotgun would not remove the case from the felony-murder rule and his instruction on involuntary manslaughter was correctly rejected.[8]

### B.

■ An *in camera* hearing was held following the direct examination of Mr. Nicholes, who testified that the defendant had admitted to him that he had killed Mr. Washington. During the *in camera* hearing, the trial court stated regarding this allegation made by Mr. Nicholes: "I believe Hudon Nicholes lied. I know him to be a scoundrel. It's hard for me to believe him under oath, and I don't believe him in this instance." The defendant then moved for

---

7. W.Va.Code, 61–2–1, in pertinent part, provides: "Murder ... in the commission of, or attempt to commit, arson, rape, robbery or burglary, is murder of the first degree."

8. Even under a first degree murder charge without consideration of the felony-murder rule, the uncontroverted facts would not warrant an involuntary manslaughter charge. The defendant

did not testify nor offer any defense to the crime. In *State v. Neider,* 170 W.Va. 662, 295 S.E.2d 902 (1982), we stated that in order to warrant the giving of a lesser included offense instruction, there had to be some evidence that factually supports the instruction. In the present case, there were no facts that would justify an involuntary manslaughter instruction.

a mistrial on the basis that the trial court was essentially stating that Mr. Nicholes was incompetent to testify. The trial court refused to declare a mistrial.

The issue raised is not whether Mr. Nicholes was incompetent to testify in the sense that he lacked testimonial capacity or personal knowledge of the facts or was rendered incompetent by reason of mental incapacity or some statutory bar, i.e., interspousal immunity, W.Va.Code, 57–3–3, or the Dead Man's Statute, W.Va.Code, 57–3–1. The issue is whether the witness was believable or credible with regard to his testimony. The distinction between competency and credibility is noted in F. Cleckley, Handbook on Evidence for West Virginia Lawyers § 2.2(A)(2) at 25 (2d ed. 1986):

> "Competency differs from credibility. The former is a question that arises before considering the evidence given by the witness; the latter concerns the degree of credit to be given to his testimony. The former denotes the personal qualifications of the witness; the latter his veracity. A witness may be competent, and yet give incredible testimony; he may be incompetent, and yet his evidence, if received, may be perfectly credible."

*See generally State v. Harman,* 165 W.Va. 494, 270 S.E.2d 146 (1980).

A ruling on the competency of a witness to testify is generally left to a trial court's discretion, as we stated in Syllabus Point 3 of *State v. Butcher,* 165 W.Va. 522, 270 S.E.2d 156 (1980):

> " 'The question of the competency of a witness to testify is left largely to the discretion of the trial court and its judgment will not be disturbed unless shown to have been plainly abused resulting in manifest error.' Point 8, Syllabus, *State v. Wilson,* 157 W.Va. 1036, 207 S.E.2d 174 (1974)."

When a trial court considers the testimony of a witness to be so inherently incredible that it is completely untrustworthy, the trial court may be justified in excluding that witness's testimony as a matter of

law. *E.g., Jackson v. United States,* 353 F.2d 862 (D.C.Cir.1965); *United States v. Smith,* 592 F.Supp. 424 (E.D.Va.1984), *vacated on other grounds,* 780 F.2d 1102 (4th Cir.1985); *Coleman v. United States,* 515 A.2d 439 (D.C.1986); *see also* F. Cleckley, *supra,* § 2.3(C).[9] We do not believe the trial court would have been warranted in reaching such a conclusion regarding the witness, Mr. Nicholes, even though the trial court expressed in the *in camera* hearing its personal dislike of the witness and skepticism of his credibility. We, therefore, find that the trial court was correct in denying a mistrial on this ground.

### C.

■ The defendant argues the trial court erred in admitting a number of exhibits because the State did not establish beyond a reasonable doubt that all of these items were used in the commission of the crime. The defendant is not correct in asserting that the State must meet this high burden before physical objects and instruments connected to a crime can be admitted into evidence. In Syllabus Point 8 of *State v. Gum,* 172 W.Va. 534, 309 S.E.2d 32 (1983), we stated:

> " 'In the trial of an indictment for murder all instruments which the evidence tends to show were used in the perpetration of the crime, may be produced for the inspection of the jury.' Syl. pt. 1, *State v. Henry,* 51 W.Va. 283, 41 S.E. 439 (1902)."

In *Gum,* 172 W.Va. at 542, 309 S.E.2d at 41, we further explained that it is not necessary to prove beyond a reasonable doubt in a criminal case that a particular instrument or object was in fact used in the crime:

> "[I]n *State v. Peterson,* 132 W.Va. 99, 107, 51 S.E.2d 78, 83 (1948), this Court said, 'It is not necessary in the trial of an indictment for murder that the instrument purported to have been used in the commission of the crime be established beyond peradventure.' In *State v. Bail,*

---

9. As the court in *Coleman,* 515 A.2d at 444, notes, this inherent incredibility standard is difficult to meet and will rarely be used to exclude a challenged witness's testimony.

140 W.Va. 680, 700, 88 S.E.2d 634, 647 (1955), this Court upheld the trial court's determination of the admissibility of metal fragment of a bullet found in the victim's vehicle, despite the fact that it was not shown to have been fired from the gun of the defendant, or to be the bullet which actually killed the victim. Finally, in *State v. Buck,* 170 W.Va. 428, 294 S.E.2d 281 (1982), this Court held that the admission of a club found in the defendant's car was not erroneous despite testimony by a codefendant that the defendant used a tire iron to strike the victim of an aggravated robbery."

In the present case, all of the exhibits challenged by the defendant were connected in some way to facts mentioned in his written statement. Some of the items were recovered from the home of the defendant's parents, who consented to a search. The shotgun was recovered from the person to whom the defendant stated he had given the shotgun. The remaining items, including a mask, were recovered from a burned building in which the defendant stated he had initially hidden the shotgun. Under these facts, we can find no error in the admission of these exhibits.

### D.

The defendant claims the trial court erred in not giving the defendant's instruction defining robbery. We have examined the instructions and find that the trial court did instruct the jury on the elements of robbery by giving State's Instruction No. 2.[10] Therefore, we find no merit in this assignment of error.

### E.

Finally, the defendant argues the prosecutor should not have been allowed to ask the jury panel during *voir dire* if they had any philosophical, religious, or ethical beliefs that would prevent them from returning a verdict to imprison the defendant for life.[11] We note that the defendant did not object to the question during *voir dire* and raised the issue for the first time in the motion for a new trial. We have stated that, in order to preserve such error, it is necessary to make an objection to matters surrounding the empaneling of a jury before the jury is drawn. Syllabus Point 4, *State v. Bennett,* 172 W.Va. 123, 304 S.E.2d 28 (1983); Syllabus Point 3, *State v. Hankish,* 147 W.Va. 123, 126 S.E.2d 42 (1962). Furthermore, this is not a jurisdictional error and consequently our law as stated in *State v. Manns,* 174 W.Va. 793, 798, 329 S.E.2d 865, 871 (1985), applies:

"Our general rule is that nonjurisdictional trial error not raised in the trial court will not be addressed on appeal."

*See also* Syllabus Point 1, *Carter v. Taylor,* 172 W.Va. 696, 310 S.E.2d 213 (1983); Syllabus Point 1, *State v. Smith,* 169 W.Va. 750, 289 S.E.2d 478 (1982) (per curiam); Syllabus Point 17, *State v. Thomas,* 157 W.Va. 640, 203 S.E.2d 445 (1974).

For the foregoing reasons, we affirm the defendant's conviction of first degree murder.

Affirmed.

---

10. State's Instruction No. 2 states: "The court instructs the jury that robbery is defined as the felonious taking of money or goods of value from the person of another or from his presence against his will, by force or by putting him in fear." State's Instruction No. 3 explains the elements of felony-murder and includes the phrase "commission of, or attempt to commit, a robbery."

11. We have discussed a similar issue with regard to a defendant's right to question potential jurors on *voir dire* whether they are unalterably opposed to recommending mercy if a guilty verdict is returned and have stated that this can be done. *See* Syllabus Point 7, *State v. Williams,* 172 W.Va. 295, 305 S.E.2d 251 (1983); *see also State v. McFarland,* 175 W.Va. 205, 332 S.E.2d 217 (1985).