**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

**State of West Virginia, Plaintiff Below,**
**Respondent**

**FILED**
**November 10, 2015**
released at 3:00 p.m.
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**vs)    No. 14-1101** (Monroe County 14-F-01)

**Joshua Neal Hubbard, Defendant Below,**
**Petitioner**

**MEMORANDUM DECISION**

Petitioner Joshua Neal Hubbard, by counsel Richard M. Gunnoe, appeals an order from the Circuit Court of Monroe County, West Virginia, entered on October 1, 2014, sentencing Petitioner to life in prison without mercy for his jury conviction of first degree murder without a recommendation for mercy and one to five years in prison for his conviction of conspiracy to commit a felony.[1]  The State, by counsel David A. Stackpole, filed a response. Petitioner filed a reply.  On appeal, Petitioner argues that the circuit court erred in admitting his statement to police into evidence as the statement was taken in violation of the prompt presentment statute.  *See* W. Va. Code § 62-1-5 (2014) and W. Va. R. Crim. P. 5(a).[2]

After carefully reviewing the record provided, the briefs and oral arguments of the parties, and taking into consideration the relevant standard of review, the Court determines that the circuit court committed no error.  Based on our decision that this case does not present a new question of law, a memorandum decision is appropriate under Rule 21 of the West Virginia Rules of Appellate Procedure.

---

[1]The sentence for conspiracy was to run concurrent with his sentence for murder.

[2]West Virginia Code § 62-1-5 provides, in pertinent part, that "[a]n officer making an arrest under a warrant issued upon a complaint, or any person making an arrest without a warrant for an offense committed in his presence or as otherwise authorized by law, shall take the arrested person without unnecessary delay before a magistrate of the county where the arrest is made." *See also* W. Va. R. Crim. P. 5(a) ("An officer making an arrest under a warrant issued upon a complaint or any person making an arrest without a warrant shall take the arrested person without unnecessary delay before a magistrate within the county where the arrest is made.").

1

Petitioner and Amber Lee Richardson, Petitioner's friend from high school, devised a plan to kill Amber's husband, Danny R. Richardson. On June 3, 2013, Petitioner staked out Mr. Richardson's home and waited for him to come outside. When Mr. Richardson left his home, Petitioner confronted him and they got into an argument. Petitioner alleged that the argument with Mr. Richardson had ended and Petitioner was walking away when Mr. Richardson came at him with a knife; however, Petitioner stated that he threw the knife away and it was not found by law enforcement. Petitioner admitted that he drew his gun and started firing at Mr. Richardson. One bullet struck Mr. Richardson in the arm. The altercation continued and Petitioner then used his gun like a club and hit Mr. Richardson in the head multiple times before shooting the victim in the head. Mr. Richardson died as a result of his wounds. Petitioner hid Mr. Richardson's body and used bleach on the gun. Petitioner then fled into the woods and hid in a camper. Amber Richardson told Sgt. Charles Kevin McKenzie of the West Virginia State Police that she and Petitioner had devised a plan to kill her husband. Amber was arrested and, the following day, Sgt. McKenzie obtained a warrant for Petitioner's arrest. Petitioner was apprehended at a camper that was located in Greenbrier County.

Sgt. McKenzie was not present at the time of Petitioner's arrest, but arrived shortly thereafter. At 4:49 p.m. on June 4, 2013, Sgt. McKenzie and another officer transported Petitioner to the Lewisburg detachment of the West Virginia State Police. Petitioner was not questioned during the ride but Petitioner informed Sgt. McKenzie that he wanted to make a statement to law enforcement. They arrived at the Lewisburg detachment around 5:10 p.m. According to Sgt. McKenzie, Petitioner was hot, hungry and exhausted so the officers provided him with food and something to drink. Petitioner then was advised he was under arrest for first degree murder.

Shortly after 5:10 p.m., Cpl. Jerry W. Davis, Jr., also with the West Virginia State Police, arrived at the detachment to assist with Petitioner's interview. Cpl. Davis spoke with Petitioner and Petitioner told him the same thing he had previously told Sgt. McKenzie – that he wished to make a statement. At 5:26 p.m., Sgt. McKenzie testified that he completed an "Interview and *Miranda* Rights Form[.]" Sgt. McKenzie testified that he went over the form with Petitioner. According to the contents of the form, Sgt. McKenzie advised Petitioner that he was under arrest for first degree murder and was going to be questioned about that crime. Petitioner was also read his *Miranda*[3] rights, which were contained within the form. At 5:35 p.m, Petitioner initialed and signed the form, which included the following: "I agree to be interviewed, answer questions, and make a statement." Cpl. Davis also signed the form as a witness. Sgt. McKenzie testified that Petitioner appeared to understand his rights. Sgt.

[3]*See Miranda v. Arizona*, 384 U.S. 436 (1966).

McKenzie and Cpl. Davis spoke to Petitioner "for approximately an hour and a half, two hours[]" to get Petitioner's side of the story. Petitioner told Cpl. Davis that "he felt more comfortable talking" without being recorded, so that first conversation was not recorded and Petitioner was informed it was not recorded. Around 7:23 p.m., Petitioner gave a recorded statement. At this time, Petitioner stated that he "felt comfortable talking and giving a taped conversation." There were no allegations of coercion or inducements made to Petitioner and Petitioner was described as being cooperative. During the interview, Petitioner admitted to devising a plan with Amber Richardson to kill her husband. Petitioner further admitted to waiting for Mr. Richardson to come outside his residence. Finally, Petitioner admitted to killing Mr. Richardson, but maintained that the victim had pulled a knife on him first. The taking of the statement ended at 9:47 p.m. and Petitioner was taken to the magistrate at approximately 10:00 p.m., after being fingerprinted.

On January 14, 2014, Petitioner was indicted on one count of murder, one count of accessory to murder and one count of conspiracy to commit murder. On June 2, 2014, Petitioner filed a motion to suppress the statement he made to the state police on the basis that "such statements were obtained or otherwise taken in violation of the Defendant's constitutional rights." The trial court held a suppression hearing on July 10, 2014, and, by order entered August 12, 2014, determined that Petitioner's statement was "given voluntarily after he had been advised of his constitutional rights and had waive[d] . . . his rights."

Petitioner raised the issue of a prompt presentment violation[4] at a September 10, 2014, hearing on pretrial motions. Subsequent to that hearing, Petitioner filed a motion to reconsider the August 12, 2014, order. By order entered September 18, 2014, the trial court denied Petitioner's motion to reconsider. During Petitioner's trial, he took the stand in his defense and recounted the same events that he had previously disclosed to the state police officers in his statement to them. Following the close of all the evidence, the jury convicted Petitioner of first degree murder with no recommendation of mercy and conspiracy to commit a felony. Petitioner was sentenced to life in prison without mercy for the murder conviction and one to five years for the conspiracy conviction with the sentences to be served concurrently. The instant appeal followed.

Petitioner's only assigned error on appeal is whether the trial court erred in allowing his statement to police into evidence. Petitioner argues that the statements he gave to police were taken in violation of the prompt presentment statute. *See* W. Va. Code § 62-1-5; W. Va. R. Crim. P. 5(a). Petitioner maintains that "the time period from his arrest to the beginning of his recorded statement constituted unreasonable delay[.]" Further, Petitioner contends

---

[4]*See supra* n.2.

there were "inconsistencies" in the evidence below that "raise suspicion as to the reason the Petitioner gave a recorded statement, and as to the reason there was a delay on the part of law enforcement in presenting him to a Magistrate." Conversely, the State contends that Petitioner mischaracterizes the state police officers' testimony and that it was Petitioner who voluntarily indicated a desire to make a statement to the officers, which is a permissible reason to delay promptly presenting a defendant to a magistrate after arrest.

We apply the following standards of review to the issue before us: "On appeal, legal conclusions made with regard to suppression determinations are reviewed *de novo*. Factual determinations upon which these legal conclusions are based are reviewed under the clearly erroneous standard. In addition, factual findings based, at least in part, on determinations of witness credibility are accorded great deference." Syl. Pt. 1, *State v. Rogers*, 231 W.Va. 205, 744 S.E.2d 315 (2013) (quoting Syl. Pt. 3, *State v. Stuart*, 192 W.Va. 428, 452 S.E.2d 886 (1994)). Further, we held in syllabus point two of *Rogers* that

> "[w]hen reviewing a ruling on a motion to suppress, an appellate court should construe all facts in the light most favorable to the State, as it was the prevailing party below. Because of the highly fact-specific nature of a motion to suppress, particular deference is given to the findings of the circuit court because it had the opportunity to observe the witnesses and to hear testimony on the issues. Therefore, the circuit court's factual findings are reviewed for clear error." Syl. Pt. 1, *State v. Lacy*, 196 W. Va. 104, 468 S.E.2d 719 (1996).

231 W. Va. at 207, 744 S.E.2d at 317, Syl. Pt. 2. Finally, "a circuit court's denial of a motion to suppress evidence will be affirmed unless it is unsupported by substantial evidence, based on an erroneous interpretation of law, or, based on the entire record, it is clear that a mistake has been made." *Lacy*, 196 W.Va. at 107, 468 S.E.2d at 722, Syl. Pt. 2, in part.

Regarding Petitioner's claim that the state police officers violated the prompt presentment statute in taking his statement prior to taking him to a magistrate, we recognize that "[o]ur prompt presentment rule contained in W.Va. Code [§] 62-1-5, and Rule 5(a) of the West Virginia Rules of Criminal Procedure, is triggered when an accused is placed under arrest. Furthermore, once a defendant is in police custody with sufficient probable cause to warrant an arrest, the prompt presentment rule is also triggered." Syl. Pt. 2, *State v. Humphrey*, 177 W.Va. 264, 351 S.E.2d 613 (1986). Moreover, we have held that "[w]hen a statement is obtained from an accused in violation of the prompt presentment rule, neither the statement nor matters learned directly from the statement may be introduced against the accused at trial." Syl. Pt. 1, *State v. DeWeese*, 213 W. Va. 339, 582 S.E.2d 786 (2003).

4

Despite this recognition regarding the significance of a violation of the prompt presentment statute, we also have determined that

> "[c]ertain delays such as delays in the transportation of a defendant to the police station, completion of booking and administrative procedures, recordation and transcription of a statement, and the transportation of a defendant to the magistrate do not offend the prompt presentment requirement." *State v. Sugg*, 193 W.Va. 388, 395-96, 456 S.E.2d 469, 476-77 (1995) (citing *State v. Ellsworth J.R.*, 175 W.Va. 64, 70, 331 S.E.2d 503, 508 (1985)) (footnote omitted).

*Rogers*, 231 W. Va. at 210, 744 S.E.2d at 320. Thus, not all delays in taking a defendant to the magistrate result in a violation of the prompt presentment statute. It is only if the delay is for the purpose of obtaining a confession from a defendant that a violation of prompt presentment occurs. As we stated in *DeWeese*,

> merely detaining a defendant in jail under an arrest warrant for fifteen hours before taking him/her to a magistrate will not trigger a sanctionable violation of the prompt presentment rule. *A sanctionable violation occurs if the purpose for detaining the defendant is to conduct an interrogation to obtain an incriminating statement from the defendant about his or her involvement in the crime for which he or she was arrested. See State v. Milburn*, 204 W.Va. 203, 511 S.E.2d 828 (1998) (holding that delay in taking defendant to magistrate did not violate the prompt presentment rule because the delay was for the purpose of questioning the defendant about a crime for which he was not arrested).

*Deweese*, 213 W. Va. at 344 n.8, 582 S.E.2d at 791 n.8 (emphasis added); *see* Syl. Pt. 1, *State v. Guthrie,* 173 W.Va. 290, 315 S.E.2d 397 (1984) ("'The delay in taking a defendant to a magistrate may be a critical factor [in the totality of circumstances making a confession involuntary and hence inadmissible] *where it appears that the primary purpose of the delay was to obtain a confession from the defendant*.' Syllabus Point 6, *State v. Persinger*, [169] W.Va. [121], 286 S.E.2d 261 (1982), as amended.") (emphasis added)). Consequently, if the delay in promptly presenting a defendant is due to the defendant's desire to voluntarily give a statement to law enforcement, the prompt presentment statute is not violated. "[O]ur prior cases do permit delay in bringing a suspect before a magistrate when the suspect wishes to make a statement." *DeWeese*, 213 W. Va. at 345 n.10, 582 S.E.2d at 792 n.10; *accord*

5

*Humphrey*, 177 W.Va. at 265, 351 S.E.2d at 614, Syl. Pt. 3 ("The delay occasioned by reducing an oral confession to writing ordinarily does not count on the unreasonableness of the delay where a prompt presentment issue is involved.").

While Petitioner argues that the delay in taking him to the magistrate was solely to obtain a statement from him, the trial court, after hearing the officers' testimony, determined that "the officers' conduct did not violate the prompt presentment rule." Instead, it was Petitioner who wished to make a statement to police and communicated that desire to Sgt. McKenzie during the trip to the Lewisburg detachment after Petitioner's arrest. Based upon Petitioner's desire to make a statement, the officers proceeded to give him *Miranda* warnings and obtained a waiver of his rights before Petitioner voluntarily spoke to the officers. The record was devoid of any evidence of coercion. Instead, the officers' testimony indicated that Petitioner was polite and cooperative with them. Further, Petitioner testified at trial[5] to giving the officers a statement in which he told them the truth and "[g]ave them everything." Petitioner never stated that the statement he gave to the law enforcement officers was coerced in any way. Therefore, we find that the trial court did not err in denying Petitioner's motion to suppress his statement as the court correctly determined that the delay occasioned in this case in bringing Petitioner before a magistrate was due to Petitioner's voluntarily decision to give a statement to the officers.

For the foregoing reasons, we find no error in the decision of the Circuit Court of Monroe County and affirm the October 1, 2014, order in which Petitioner was sentenced to life in prison without mercy for his jury conviction of first degree murder, and to a concurrent sentence of one to five years for his conspiracy to commit a felony conviction.

---

[5]As an ancillary matter, even though we resolved this case on the prompt presentment violation argued by the parties, we further note that Petitioner, by taking the stand and testifying consistently with the statement he had previously given to the state police officers, eviscerated his argument that the delay in taking him to a magistrate "had a coercive influence on his decision to give a statement." Petitioner's trial testimony, which unequivocally was not coerced, was consistent with the statement he had previously given to police. In other words, when Petitioner voluntarily testified at trial he essentially negated or waived any error that he maintained occurred as a result of his allegation that the prompt presentment statute was violated. *See* Syl. Pt. 1, *State v White*, 223 W. Va. 527, 678 S.E.2d 33 (2009) ("'When there has been a knowing and intentional relinquishment or abandonment of a known right, there is no error and the inquiry as to the effect of a deviation from the rule of law need not be determined.' Syl. Pt. 8, in part, *State v. Miller*, 194 W.Va. 3, 459 S.E.2d 114 (1995).").

Affirmed.

ISSUED:  November 10, 2015

CONCURRED IN BY:

Chief Justice Margaret L. Workman
Justice Robin Jean Davis
Justice Brent D. Benjamin
Justice Menis E. Ketchum
Justice Allen H. Loughry II

7