**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

**FILED**

**April 26, 2021**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**State of West Virginia,**
**Plaintiff Below, Respondent**

**vs.)  No. 20-0320** (Kanawha County 18-F-641)

**Richard S.,**
**Defendant Below, Petitioner**

## MEMORANDUM DECISION

Petitioner Richard S., by counsel Matthew A. Victor, appeals the Circuit Court of Kanawha County's March 13, 2020, sentencing order.[1] Respondent the State of West Virginia, by counsel Andrea Nease Proper, filed a response.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision is appropriate under Rule 21 of the Rules of Appellate Procedure.

On May 13, 2018, petitioner's then-wife contacted police with information that petitioner possessed child pornography on his computer in the form of a video of petitioner touching a minor female child with his penis and fingers. On May 21, 2018, officers executed a search warrant of petitioner's home and seized numerous items, including a laptop, a hard drive, and CDs. However, they did not find evidence of a crime. On May 24, 2018, two women were in petitioner's home cleaning it and found DVDs mixed with music CDs. One of the women took the DVDs home and was able to view them; those DVDs showed petitioner and an adult female molesting a female child. The DVDs were returned to the Mason County home, and the women contacted police. Police executed a second search warrant and obtained those DVDs from petitioner's home. When officers viewed the DVDs, they saw petitioner masturbating over the child's vagina while the adult female held the child's legs apart. In addition, it depicted petitioner performing oral sex on the child. The investigation revealed that the adult female shown on that DVD was petitioner's former

---

[1] Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *In re Jeffrey R.L.*, 190 W. Va. 24, 435 S.E.2d 162 (1993); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

live-in girlfriend, Roseanna T., who was caring for her granddaughter, M.M., at that time. M.M. was the child in the videos and was one to two years old at the time.

Roseanna T.'s daughter, C.T., told officers that petitioner had molested her when she was approximately fourteen years old. Roseanna T. admitted to officers that petitioner made videos of their sexual encounters and stated that she may be in a video but blamed her uncertainty on a memory deficit caused by physical abuse that she suffered from petitioner. Officers told Roseanna T. that petitioner was arrested on outstanding warrants in Mason County and that he had admitted he and Roseanna T. were the people in the video. When Roseanna T. was questioned again, she admitted that petitioner had sexually abused M.M. and filmed the incident. She also admitted that both she and petitioner were on drugs at the time. Roseanna T. confessed to touching her granddaughter and watching petitioner ejaculate on M.M. Roseanna T. was placed under arrest.

On May 29, 2018, petitioner was arrested for the violation of a domestic violence protective ("DVP") order and taken to the Mason County detachment of the West Virginia State Police. After being read his *Miranda* rights, petitioner admitted that he was the man in the videos and that the videos were stored in his Mason County residence. He told officers that he took the videos with a phone and that they were taken in South Charleston, West Virginia. Petitioner further admitted that the child in question was approximately one year old at the time. He identified Roseanna T. as the other adult in the video, stating that the child in the video was Roseanna T.'s granddaughter. Petitioner blamed his actions on his methamphetamine use, contending that he had never been aroused by a child other than during that period. Finally, he admitted that he had taken nude photographs and videos of C.T., who was fourteen at that time.

The criminal complaint in the instant matter was filed on May 31, 2018. Petitioner was indicted by a Kanawha County grand jury during the September of 2018 term of court on twenty counts, all related to M.M.: eleven counts of first-degree sexual abuse; five counts of sexual abuse by a parent, guardian, custodian, or person in a position of trust; and four counts of first-degree sexual assault. On January 29, 2019, petitioner filed a motion to suppress his statement to police, alleging a violation of the prompt presentment rule. Following a pretrial hearing, during which investigating officer Trooper Burnem testified, petitioner's motion was denied.

Petitioner's trial began on January 6, 2020. During jury selection, the court learned that several of the potential jurors had served on a jury in a criminal trial earlier in the same term of court. The State attempted to use one of its peremptory challenges to strike one of those jurors. According to that juror's questionnaire, his race is "Asian or Pacific Islands." Petitioner challenged the strike, arguing that the juror should not be struck because he is a member of a minority group. The circuit court first stated that because petitioner is white, *Batson v. Kentucky*, 476 U.S. 79 (1986), and its progeny do not apply. In response to petitioner's challenge, the State told the court that the juror had recently served on another jury and it "believe[d] that that juror was one of the holdouts in that case. It certainly has nothing to do with his race." According to the State, although the previous defendant was ultimately convicted, it took "hours of deliberation with a crime that had been caught on video." When the court asked petitioner about what prejudice would result from striking the juror, he responded "the prejudice is that he will not be judged by a jury of his peers that will represent the spectrum of the community, including the minority, and that's the prejudice." The circuit court heard additional argument on the juror issue, at which time the State

2

pointed out that petitioner had struck every other potential juror who had served on the earlier jury. The court ultimately denied petitioner's motion.

During petitioner's trial, officers testified regarding obtaining the DVDs at issue, in addition to the chain of custody of those DVDs. A representative with the West Virginia State Police testified that the DVDs were recorded once and could not be edited after being recorded due to the type of disc used. At the close of the presentation of the State's evidence, petitioner moved for a judgment of acquittal based on the lack of evidence of penetration necessary to support the first-degree sexual assault counts. He also argued that the evidence was insufficient to sustain eleven separate acts of first-degree sexual abuse. The circuit court denied petitioner's motion but told petitioner he could submit a jury instruction defining penetration; however, petitioner declined to do so. Petitioner did not testify or present any witnesses. Following jury deliberations, petitioner was found guilty of all twenty counts.

On January 15, 2020, petitioner moved for a new trial and/or judgment of acquittal, asserting that the jury selection violated *Batson*; the circuit court erred in denying his motion to suppress the videos that were admitted without establishing a proper chain of custody; the circuit court erred in refusing petitioner's Rule 404(b) cautionary instruction; there was insufficient evidence to convict petitioner on all counts; there was insufficient evidence of "penetration" to sustain the counts that required penetration; there was insufficient evidence to convict on eleven separate counts of first-degree sexual abuse; and cumulative error. At that time, petitioner also requested that he be permitted to hire a physical and mental health expert to conduct a sex offender evaluation pursuant to West Virginia Code § 62-12-2(e), and that motion was granted by order entered on February 3, 2020. Ralph Smith, M.D. was retained to conduct the sex offender evaluation.

A presentence investigation ("PSI") was completed, which showed that petitioner admitted to molesting M.M., claiming he molested her only once and did not penetrate her. According to the report, petitioner was thirty-seven years old and the victim was just one year old at the time of the crime. The PSI reflects a lengthy criminal history, which includes multiple domestic battery and assault charges, multiple protective orders, drug charges, armed robbery, and fugitive from justice proceedings. The evaluator found that petitioner showed only minimal remorse and no sympathy for M.M.

On March 2, 2020, petitioner moved to continue the sentencing hearing because the report from his expert had not yet been completed. The circuit court decided to proceed with sentencing. During the sentencing hearing, the circuit court noted that petitioner is "one of the most evil persons [it had] ever encountered" and was "the epitome of evil." The court also characterized the video at issue as "haunting," commenting that "[i]t brought grown men to tears, watching [petitioner] molest a helpless baby as she lay there, watching cartoons with her bottle, crying while you took your time to get off, performing oral sex on her, penetrating her vagina." The circuit court found that "due to the nature of the crimes and the evidence presented at trial, an alternative sentence would not be granted in this matter." Accordingly, the circuit court determined that it was unnecessary to review petitioner's sex offender evaluation prior to sentencing. The circuit court informed petitioner that he could file a motion to reconsider within 120 days "and then once [it] receive[s the] report, [the court] will take that with the motion to reconsider, and [it] will reconsider

3

the sentence . . . ."

The psychiatric evaluation completed by Dr. Smith, was ultimately sent to the circuit court on March 13, 2020. According to that report, petitioner reported a history of mental health issues, including bipolar disorder, depression, and anxiety. However, he said he only had counseling once after his then-ten-year-old daughter accused him of strangling her. He admitted to heavy drug use, causing the loss of his driver's license at the age of twenty-one due to multiple DUIs. Dr. Smith diagnosed petitioner with pedophilic disorder, voyeuristic disorder, substance use disorder, bipolar disorder, and other personality disorder with antisocial and narcissistic features. Dr. Smith also noted that any treatment should occur in a secure facility but that petitioner's personality disorder would likely be a complicating factor in treatment.

By order entered on March 13, 2020, petitioner was sentenced to the following terms of incarceration: five to twenty-five years for each of eleven counts of first-degree sexual abuse; twenty-five to one hundred years for each of four counts of first-degree sexual assault; and ten to twenty years for each of four counts of sexual abuse by a parent, guardian, custodian, and person in a position of trust. Each of these sentences were ordered to run consecutive to one another. Petitioner was also sentenced to fifty years of extended supervision upon release. In its sentencing order, the circuit court denied petitioner's motion to continue the sentencing hearing. Petitioner appeals from the sentencing order.

As we have previously stated,

> "'[t]he Supreme Court of Appeals reviews sentencing orders . . . under a deferential abuse of discretion standard, unless the order violates statutory or constitutional commands.' Syllabus Point 1, in part, *State v. Lucas*, 201 W. Va. 271, 496 S.E.2d 221 (1997)." Syllabus Point 2, *State v. Georgius*, 225 W. Va. 716, 696 S.E.2d 18 (2010).

Syl. Pt. 1, *State v. Varlas*, __ W. Va. __, 844 S.E.2d 688 (2020).

On appeal, petitioner sets forth seven assignments of error: (1) The trial court erred in excluding from the petit jury a member of a distinct minority group in violation of *Batson* and its progeny; (2) the trial court erred in denying petitioner's motion to suppress his statement to law enforcement officers; (3) the trial court erred in admitting the video discs containing incriminating evidence without establishing the proper chain of custody; (4) there was insufficient evidence to convict petitioner on eleven separate counts of first-degree sexual abuse; (5) there was insufficient evidence of "penetration" to sustain petitioner's conviction on all counts of the indictment involving the element of "penetration"; (6) the trial court erred in sentencing petitioner without the benefit of the West Virginia Code § 62-12-2(e) sexual offender evaluation report; and (7) petitioner's sentence violates the Eighth Amendment to the United States and West Virginia Constitutions.

With regard to the juror's exclusion from the jury, petitioner argues that, pursuant to *Batson*, the State may not intentionally, and for reasons of race, exclude members of racial minorities from the jury venire. Without citing additional authority, petitioner argues that unless

the State can offer a race-neutral explanation for striking a member of a recognized and distinct minority group, the exclusion of a member of that group from the jury is constitutionally prohibited. Without citing to the record, petitioner contends that when the State was alerted to the "unexplained exclusion of an Asian American" from the jury, it offered no rational or credible reasons for that exclusion. Petitioner further contends that the fact other minority jurors may still have been on the jury is irrelevant because the State "so blatantly exercised one out of two of its peremptory strikes to exclude a cognizable member to a minority group." Petitioner argues that he does not have to be a member of the same race as the juror to have standing to raise a *Batson* claim, citing *Holland v. Illinois*, 493 U.S. 474 (1990), and *Powers v. Ohio*, 499 U.S. 400 (1991). While petitioner mentions *Holland* and *Powers* in passing, he does not discuss or present any analysis related to these cases.

As we have previously stated, "[w]e review jury selection under *Batson v. Kentucky*, 476 U.S. 79 . . . (1986), *de novo*, but we review underlying factual findings for clear error. We review the trial court's ultimate disposition for abuse of discretion." Syl. Pt. 7, in part, *State v. Boyd*, 238 W. Va. 420, 796 S.E.2d 207 (2007). However, we have also held that, "[u]pon review, this Court will afford great weight to a trial court's findings as to whether a peremptory strike was used to advance racial or sexual discrimination." Syl. Pt. 4, *Parham v. Horace Mann Ins. Co.*, 200 W. Va. 609, 611, 490 S.E.2d 696, 698 (1997). In addressing petitioner's contentions, we must also consider our holdings in Syllabus Points 2 and 3 of *State v. Marrs*, 180 W. Va. 693, 379 S.E.2d 497 (1989).[2]

In the instant matter, the State articulated its reason for potentially striking the juror, stating that it believed "that that juror was one of the holdouts in [the prior] case. It certainly has nothing

---

[2] Syllabus Points 2 and 3 of *Marrs* provide:

2. To establish a prima facie case for a violation of equal protection due to racial discrimination in the use of peremptory jury challenges by the State, "the defendant first must show that he is a member of a cognizable racial group, and that the prosecutor has exercised peremptory challenges to remove from the venire members of the defendant's race. Second, the defendant is entitled to rely on the fact, as to which there can be no dispute, that peremptory challenges constitute a jury selection practice that permits 'those to discriminate who are of a mind to discriminate.' Finally, the defendant must show that these facts and any other relevant circumstances raise an inference that the prosecutor used that practice to exclude the veniremen from the petit jury on account of their race." [Citations omitted.] *Batson v. Kentucky,* 476 U.S. 79 at 96, 106 S.Ct. 1712 at 1722, 90 L.Ed.2d 69 (1986).

3. The State may defeat a defendant's prima facie case of a violation of equal protection due to racial discrimination in selection of a jury by providing non-racial, credible reasons for using its peremptory challenges to strike members of the defendant's race from the jury.

to do with his race." It also explained that although the defendant in that case was convicted, it took "hours of deliberation with a crime that had been caught on video." The State further pointed out that petitioner had struck every other juror that was seated in that prior jury trial. The fact that the earlier case in which the juror had served as a juror and petitioner's case both relied upon video evidence of the crime itself is particularly relevant to the State's purported reason for seeking to strike the juror. Further, the State did not strike all of the minority jurors from the venire. For these reasons, affording great weight to the circuit court's findings as to whether a peremptory strike was used to advance racial or sexual discrimination, we find that the State's use of its peremptory strike of the juror at issue did not violate *Batson*. Therefore, petitioner's first assignment of error is without merit.

Petitioner's second assignment of error is his contention that the circuit court erred by denying his motion to suppress his statements. He argues that police officers failed to promptly present petitioner to a magistrate as required by the prompt presentment rule. *See State v. Humphreys*, 177 W. Va. 264, 351 S.E.2d 613 (1986). Petitioner contends that police purposely delayed taking him to a magistrate in order to encourage him to make a statement. Without citing to the record, petitioner asserts that he was never advised he had a right to be promptly presented to the neutral and detached magistrate. While admitting that "[i]t may just be that the [m]agistrate [c]ourt was closed that night and it is not clear whether any [m]agistrate was on telephonic duty," petitioner argues that the officers should have refrained from eliciting a statement from petitioner under the guise of "booking procedure" for the charge of violation of the DVP; instead, they should have taken petitioner to jail without eliciting an incriminating statement. He also asserts that due to the violation of the prompt presentment rule, his statement should have been suppressed. However, while petitioner cites cases that discuss the prompt presentment rule, he does not contend that any of those cases stand for the proposition that his statement should have been suppressed due to the alleged violation of that rule.

This Court has held that "[a] trial court's decision regarding the voluntariness of a confession will not be disturbed unless it is plainly wrong or clearly against the weight of the evidence." Syl. Pt. 3, *State v. Vance*, 162 W. Va. 467, 250 S.E.2d 146 (1978). More recently, we held:

> This Court is constitutionally obligated to give plenary, independent, and *de novo* review to the ultimate question of whether a particular confession is voluntary and whether the lower court applied the correct legal standard in making its determination. The holdings of prior West Virginia cases suggesting deference in this area continue, but that deference is limited to factual findings as opposed to legal conclusions.

Syl. Pt. 2, *State v. Farley*, 192 W. Va. 247, 452 S.E.2d 50 (1994). Further, our prompt presentment rule is a creature of statute. It guarantees that

> [a]n officer making an arrest under a warrant issued upon a complaint, or any person making an arrest without a warrant for an offense committed in his presence or as otherwise authorized by law, shall take the arrested person without unnecessary delay before a magistrate of the county where the arrest is made.

6

W. Va. Code § 62-1-5(a)(1); *see also* W. Va. R. Crim. P. 5(a). However, we have been clear that it is not the delay itself that triggers application of the rule. Rather, the delay in taking a defendant to a magistrate may become a critical factor in evaluating the voluntariness of a defendant's statement "where it appears that the primary purpose of the delay was to obtain a confession from the defendant." Syl. Pt. 6, in part, *State v. Persinger*, 169 W. Va. 121, 286 S.E.2d 261 (1982). Here, petitioner failed to show that he was held for an inordinate amount of time or that he made any type of statement under duress. Petitioner was held at the police detachment for approximately two hours before being taken to jail, as there was no magistrate on duty that night. He was taken to the detachment for processing on the violation of a DVP order charge, which the State argues is clearly allowed by this Court's prompt presentment jurisprudence. Following an altercation with M.M.'s father, petitioner was transported to the hospital, during which time he began talking about the DVDs found in his home; however, the officer stopped him and told him they would discuss that later. While petitioner was being processed at the station, he indicated that he wished to give a statement regarding the child pornography investigation. At that time, he said that he was there voluntarily and was obviously volunteering information, in addition to freely answering the officer's questions. Although petitioner did not immediately see a magistrate, petitioner arrived at the detachment in the middle of the night and, according to the officer's testimony, Mason County magistrates go off duty no later than 5:30 p.m. Therefore, most of his time waiting for presentment was spent in jail. For these reasons, we find that the circuit court did not err in denying petitioner's motion to suppress based on the alleged failure to promptly present him before a magistrate.

Petitioner's third assignment of error is that the circuit court erred in admitting the DVDs containing incriminating evidence without establishing the proper chain of custody. While petitioner makes a number of factual contentions related to this assignment of error, he fails to cite to the record in support of his assertions regarding the chain of custody—instead citing only two pages of the transcript that confirm that officers did not find the DVDs at issue during the execution of the first search warrant. Because this three-paragraph argument fails to comply with Rule 10(c)(7) of the West Virginia Rules of Appellate Procedure, we decline to address it.[3]

---

[3] Rule 10(c)(7) of the West Virginia Rules of Appellate Procedure provides that

> [t]he brief must contain an argument exhibiting clearly the points of *fact* and law presented, the standard of review applicable, and citing the authorities relied on, under headings that correspond with the assignments of error. *The argument must contain appropriate and specific citations to the record on appeal, including citations that pinpoint when and how the issues in the assignments of error were presented to the lower tribunal*. The Court may disregard errors that are not adequately supported by specific references to the record on appeal.

(Emphasis added). Additionally, in an Administrative Order entered on December 10, 2012, *Re: Filings That Do Not Comply With the Rules of Appellate Procedure,* Chief Justice Menis E. Ketchum specifically noted that "[b]riefs that lack citation of authority [or] fail to structure an argument applying applicable law" are not in compliance with this Court's rules. Further, the order states that "[b]riefs with arguments that do not contain a citation to legal authority to support the
(Continued . . .)

Petitioner next argues there was insufficient evidence to convict him on eleven separate counts of first-degree sexual abuse. Again, petitioner refers to events that purportedly occurred during his trial, but he fails to point to the record even a single time in support of this alleged error. Due to this failure, it is unclear whether the issue was even raised before the circuit court prior to or during trial. In addition, although petitioner acknowledges the "heavy burden" to sustain a challenge to the sufficiency of the evidence, he fails to discuss any of the specific criteria set forth in *State v. Guthrie*, 194 W. Va. 657, 461 S.E.2d 163 (1995). Thus, based on petitioner's failure to comply with Rule 10(c)(7) of the West Virginia Rules of Appellate Procedure, we decline to address the merits of this argument.

Petitioner's fifth assignment of error is his contention that there was insufficient evidence of "penetration" to sustain his conviction on all counts of the indictment involving the element of penetration. He argues that when instructing the jury on the elements of first-degree sexual assault in counts twelve through fifteen of the indictment, the circuit court defined "sexual intercourse" as "any act between persons involving penetration, however slight, of the female sex organ by the male sex organ, or involving contact between the sex organs of one person and the mouth or anus of another person." Petitioner asserts that the circuit court emphasized penetration as an element of the offense, rather than "contact between the sex organs of one person and the mouth or anus of another person." Petitioner argues that no penetration occurred in this case and the jury "simply got it wrong. . . ."

This Court has long held as follows:

> A criminal defendant challenging the sufficiency of the evidence to support a conviction takes on a heavy burden. An appellate court must review all the evidence, whether direct or circumstantial, in the light most favorable to the prosecution and must credit all inferences and credibility assessments that the jury might have drawn in favor of the prosecution. The evidence need not be inconsistent with every conclusion save that of guilt so long as the jury can find guilt beyond a reasonable doubt. Credibility determinations are for a jury and not an appellate court. Finally, a jury verdict should be set aside only when the record contains no evidence, regardless of how it is weighed, from which the jury could find guilt beyond a reasonable doubt. . . .

*Guthrie* at 663, 461 S.E.2d at 169, syl. pt. 3. During petitioner's trial, the four first-degree sexual assault counts each had the following instruction given: "Sexual assault in the first degree is committed when any person being 18 years old or more engages in sexual intercourse or sexual intrusion with another person who is younger than 12 years old and is not married to that person." The circuit court also defined sexual intercourse and sexual intrusion, both of which include "penetration, however slight, of the female sex organ." The State discussed the required elements in its closing, and petitioner argued there was no penetration. In response to petitioner's motion for judgment of acquittal based on a lack of penetration, the circuit court inquired, "But that was

argument presented and do not 'contain appropriate and specific citations to the record on appeal . . . ' as required by rule 10(c)(7)" are not in compliance with this Court's rules.

8

his finger in the video that was penetrating her vagina and anus, right?" It is apparent that the circuit court and jury both determined there was penetration based upon the video evidence presented. As set forth above, credibility determinations are for a jury and will be set aside only when the record contains no evidence, regardless of how it is weighed, from which the jury could find guilt beyond a reasonable doubt. Weighing the evidence in the light most favorable to the prosecution, we find that petitioner has failed to sustain his heavy burden to prove insufficiency of the evidence on this issue.

Petitioner's sixth assignment of error is that the circuit court erred in sentencing petitioner without the benefit of the sexual offender evaluation report pursuant to West Virginia Code § 62-12-2(e).[4] Petitioner contends that an evaluation pursuant to West Virginia Code § 62-12-2(e) is necessary to determine probation eligibility and a psychiatric or psychological diagnosis. He asserts that it also provides relevant sentencing information, that it establishes rehabilitative potential, and that it is an integral part of the sentencing process in criminal cases of a sexual nature. However, the circuit court denied petitioner's request to continue the sentencing hearing for the purpose of obtaining petitioner's sexual offender evaluation report, holding that "due to the nature of the crimes and the evidence presented at trial, an alternative sentence would not be granted in this matter." Petitioner asserts that it is arguable whether he would have been a candidate for probation upon the circuit court's review of that report but that the circuit court abused its discretion in foreclosing that option for petitioner. Petitioner argues that the report could have had a significant impact on the circuit court's formulation and pronouncement of sentence so the sentencing hearing should have been continued.

Initially, we point out that "'[p]robation is a matter of grace and not a matter of right.' Syllabus point 3, *State v. Jones*, 216 W. Va. 666, 610 S.E.2d 1 (2004)." Syl. Pt. 2, *Christopher H. v. Martin*, 241 W. Va. 706, 828 S.E.2d 94 (2019). In this case, the relevant studies were completed, but the circuit court determined that it was unnecessary to review them for purposes of alternative sentencing, as the court had already determined that alternative sentencing was not an option based upon the specific facts of petitioner's case. During the sentencing hearing, as part of the denial of

---

[4] West Virginia Code § 62-12-2(e) provides:

Any person who has been found guilty of, or pleaded guilty to, a violation of the provisions of § 61-8-12 of this code, the provisions of § 61-8A-1 *et seq.* of this code, the provisions of § 61-8B-1 *et seq.* or § 61-8C-1 *et seq.* of this code, or under the provisions of § 61-8D-5 of this code may only be eligible for probation after undergoing a physical, mental, and psychiatric or psychological study and diagnosis which shall include an ongoing treatment plan requiring active participation in sexual abuse counseling at a mental health facility or through some other approved program: *Provided,* That nothing disclosed by the person during such study or diagnosis may be made available to any law-enforcement agency or other party without that person's consent, or admissible in any court of this state, unless the information disclosed indicates the intention or plans of the probationer to do harm to any person, animal, institution, or property, in which case the information may be released only to such persons as might be necessary for protection of the said person, animal, institution, or property.

9

petitioner's motion to continue sentencing, the circuit court informed petitioner that he could file a motion to reconsider within 120 days "and then once [it] receive[s] Dr. Smith and Dr. Thistlethewaite's report, [the court] will take that with the motion to reconsider, and [it] will reconsider the sentence . . . ." As detailed above, Dr. Smith diagnosed petitioner with pedophilic disorder, voyeuristic disorder, substance use disorder, bipolar disorder, and other personality disorder with antisocial and narcissistic features. Dr. Smith also noted that any treatment should occur in a secure facility. The only portion of the report petitioner points to in support of his contention that he is a candidate for probation is Dr. Smith's finding that petitioner expressed regret for his actions, which he contends makes him amenable to treatment. For these reasons, we find no error in the circuit court's decision to sentence petitioner before receiving Dr. Smith's report.

Finally, he argues that his effective sentence of 205-775 years of incarceration violates the Eighth Amendment to the United States and West Virginia Constitutions. In his three-paragraph argument on this issue, he again fails to cite to the record, violating Rule 10(c)(7) of the West Virginia Rules of Appellate Procedure. In that argument, he contends that his sentence is highly disproportionate to his alleged crimes and, as such, is unconstitutionally impermissible. In addition to our standard of review of sentencing orders set forth above, we have consistently held that "'[s]entences imposed by the trial court, if within statutory limits and if not based on some [im]permissible factor, are not subject to appellate review.' Syl. pt. 4, *State v. Goodnight*, 169 W. Va. 366, 287 S.E.2d 504 (1982)." Syl. Pt. 2, *State v. Bleck*, 243 W. Va. 293, 843 S.E.2d 775 (2020). Petitioner does not contend that his sentence was based upon an impermissible factor or was not within statutory limits. Therefore, we find that petitioner's final assignment of error is without merit. For these reasons, we affirm the circuit court's March 13, 2020, sentencing order.

Affirmed.

**ISSUED:**  April 26, 2021

**CONCURRED IN BY:**

Chief Justice Evan H. Jenkins
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice John A. Hutchison
Justice William R. Wooton

10